KALEEL BUILDERS, INC. Plaintiff v. KENT ASHBY, d/b/a SUPERIOR EXTERIORS; LAKE BUILDERS, INC.; LW CORP.; BOB'S HEATING & AIR CONDITIONING COMPANY, INC.; and DON DUFFY, ARCHITECT, Defendants

No. COA02-1616

(Filed 4 November 2003)

**1. Indemnity— negligent construction claim—express contract—contract implied-in-fact—contract implied-in-law—subcontractors**

The trial court did not err in a case arising out of the alleged negligent construction of a house by dismissing under N.C.G.S. § 1A-1, Rule 12(b)(6) plaintiff general contractor's claim for indemnity against defendant subcontractors, because: (1) plaintiff's complaint alleges no express contractual right, neither written nor oral, of indemnity in the agreements between the parties; (2) plaintiff's allegations do not allege a right to indemnification implied-in-fact when plaintiff's complaint alleges breach of contract and breach of warranty by a number of independent subcontractors; and (3) plaintiff has not stated a claim for an equitable right under the implied-in-law theory of indemnity when

**KALEEL BUILDERS, INC. v. ASHBY**

[161 N.C. App. 34 (2003)]

North Carolina law requires there be an underlying injury sounding in tort, and plaintiff failed to allege tortious conduct from which indemnity is sought.

**2. Contribution— negligent construction claim—subcontractors—failure to allege tort theory**

The trial court did not err in a case arising out of the alleged negligent construction of a house by dismissing under N.C.G.S. § 1A-1, Rule 12(b)(6) plaintiff general contractor's claim for contribution against defendant subcontractors, because: (1) there is no negligence claim where all the rights and remedies have been set forth in the contractual relationship; and (2) plaintiff's failure to allege a cause of action in tort means the contribution theory of recovery fails as a matter of law.

**3. Statutes of Limitation and Repose— negligent construction claim—breach of contract—breach of warranty**

The trial court did not err in a case arising out of the alleged negligent construction of a house by dismissing under N.C.G.S. § 1A-1, Rule 12(b)(6) plaintiff general contractor's claims for breach of contract and breach of warranty against defendant subcontractors, because those claims were barred by the pertinent statute of limitations. N.C.G.S. § 1-52(1).

**4. Contribution— negligent construction claim—architect**

A de novo review revealed that the trial court did not err in a case arising out of the alleged negligent construction of a house by granting summary judgment in favor of defendant architect on the issue of contribution, because: (1) there is no issue of fact as to whether the architect and plaintiff are joint tortfeasors; and (2) the only tort alleged and supported by the facts is between the general contractor and the architect, which is barred by the statute of limitations.

**5. Indemnity— negligent construction claim—architect**

A de novo review revealed that the trial court did not err in a case arising out of the alleged negligent construction of a house by granting summary judgment in favor of defendant architect on the issue of indemnity, because: (1) plaintiff has neither pled, alleged, nor provided facts to create any issue of fact as to whether there is an express contract or a contract implied-in-fact with the architect when there was no contractual privity between these two parties; and (2) the only tort alleged and supported

by the facts is between the general contractor and the architect, which is barred by the statute of limitations.

Appeal by Kaleel Builders, Inc., from the following orders by Judge Richard D. Boner in Mecklenburg County Superior Court filed 16 July 2002, dismissal of claims pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2001) of the North Carolina Rules of Civil Procedure against Bob's Heating and Air Conditioning Company, Inc., LW Corp., and Kent Ashby d/b/a Superior Exteriors; order filed 12 September 2002, dismissal of claims pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), against Lake Builders, Inc.; and order filed 19 September 2002, grant of summary judgment pursuant to N.C. Gen. Stat. § 1A-1, Rule 56, for defendant Don Duffy, Architect. Heard in the Court of Appeals 10 September 2003.

*Jones, Hewson & Woolard, by Lawrence J. Goldman, for plaintiff appellant.*

*McAngus, Goudelock & Courie, P.L.L.C., by Charles D. Cheney and Jeffrey D. Keister, for Kent Ashby, d/b/a Superior Exteriors defendant appellee.*

*Pharr & Boynton, P.L.L.C., by Mark D. Boynton, for Lake Builders, Inc., defendant appellee.*

*Moreau, Marks & Gavigan, P.L.L.C., by Daniel C. Marks, for LW Corp. defendant appellee.*

*Giordano, Gordon & Burns, P.L.L.C., by Marc R. Gordon, for Bob's Heating & Air Conditioning Company, Inc., defendant appellee.*

*Hamilton, Gaskins, Fay & Moon, P.L.L.C., by David B. Hamilton and David G. Redding, for Don Duffy, Architect defendant appellee.*

McCULLOUGH, Judge.

This case arises out of a dispute between general contractor, Kaleel Builders, Inc. ("plaintiff"), and various subcontractors and an architect (when referred to collectively "defendants"). The trial court dismissed the claims against subcontractors Kent Ashby, d/b/a Superior Builders, Inc. ("Ashby"), Lake Builders, Inc. ("Lake Builders"), LW Corp., and Bob's Heating & Air Conditioning Company, Inc. ("Bob's Heating"), and granted summary judgment in favor of architect, Don Duffy ("Mr. Duffy").

## KALEEL BUILDERS, INC. v. ASHBY

[161 N.C. App. 34 (2003)]

The underlying facts of the case are as follows: Plaintiff was hired by Pier Giorgio and Paula A. Andretta ("Andrettas") to construct a residence in Mecklenburg County, North Carolina. During construction of the home, plaintiff entered into the following agreements: with Ashby, to provide all labor and materials for the application of the hard coat stucco exterior; with Lake Builders, to perform framing on the residence; with LW Corp., to provide all the labor and materials for the installation of the roofing system to the residence; and with Bob's Heating, to provide the design and all labor and materials for the HVAC/mechanical installation to the residence. The Andrettas contracted directly with Mr. Duffy to provide architectural services on the residence.

In the fall of 1996, construction of the residence was halted. The Andrettas filed a demand for arbitration against plaintiff for allegedly defective construction including the work of the defendant subcontractors and the design/construction supervision of Mr. Duffy. Plaintiff's complaint, filed on 18 July 2001, seeking indemnification or, in the alternative, contribution was dismissed as to the subcontractors on the basis that the action was not commenced within the applicable period of limitations on the breach of contract and breach of warranty claims, and failed to state a cause of action on the negligence claims. Summary judgment on the negligence claim was granted in favor of Mr. Duffy. We affirm the lower court's order granting dismissal of the claims against the subcontractors and summary judgment in favor of Mr. Duffy.

### Dismissal of the Subcontractors

Plaintiff argues that dismissal of the claims against the subcontractors was error as the trial court failed to recognize plaintiff's theory of indemnity or, alternatively, contribution. Defendants argue, and the trial court found, that the facts of this case preclude the plaintiff's use of indemnification and contribution as prayers for relief, and that the remaining claims of breach of warranty and breach of contract are time barred by N.C. Gen. Stat. § 1-52(1) (2001). Furthermore, defendant argues all other allegations fail to state any remediable claims that sound in tort. We agree with defendants' argument pursuant to the reasoning herein.

Upon our review of the trial court's order granting a Rule 12(b)(6) dismissal, we read all allegations in the light most favorable to plaintiff. *See Ford v. Peaches Entertainment Corp.*, 83 N.C. App. 155, 349 S.E.2d 82 (1986); *disc. review denied*, 318 N.C. 694, 351 S.E.2d 746 (1987). However, a complaint is without merit if:

(1) the complaint on its face reveals that no law supports the plaintiffs' claim, (2) the complaint on its face reveals the absence of facts sufficient to make a good claim, or (3) the complaint discloses some fact that necessarily defeats the plaintiffs' claim.

*Harrold v. Dowd*, 149 N.C. App. 777, 780, 561 S.E.2d 914, 916 (2002). A statute of limitations defense is properly asserted in a motion to dismiss under Rule 12(b)(6), and is proper grounds for the trial court to find a complaint is without merit. *Horton v. Carolina Medicorp, Inc.*, 119 N.C. App. 777, 779, 460 S.E.2d 567, 568 (1995), *rev'd on other grounds*, 344 N.C. 133, 472 S.E.2d 778 (1996).

*I. Indemnification*

[1] In its complaint, plaintiff argues that it is entitled to indemnity for damages which may be awarded to the Andrettas in pending arbitration against plaintiff. In determining whether plaintiff has stated a claim of indemnity for which relief can be granted, we first review a general summary of a party's right to indemnity in North Carolina. Upon this review, we believe the trial court properly dismissed plaintiff's claim of a right to indemnity.

In North Carolina, a party's rights to indemnity can rest on three bases: (1) an express contract; (2) a contract implied-in-fact; or (3) equitable concepts arising from the tort theory of indemnity, often referred to as a contract implied-in-law. *See McDonald v. Scarboro*, 91 N.C. App. 13, 370 S.E.2d 680, *disc. review denied*, 323 N.C. 476, 373 S.E.2d 864 (1988); 41 Am. Jur. 2d *Bases for Indemnity* § 2 (1995) at 348. While an indemnity clause specifically set out in a contract as part of the bargained-for exchange is clear under traditional contract principles, the two variations of implied rights to indemnity discussed in North Carolina cases require some background before applying them to the instant case.

A right of indemnity implied-in-fact stems from the existence of a binding contract between two parties that necessarily implies the right. The implication is derived from the relationship between the parties, circumstances of the parties' conduct, and that the creation of the indemnitor/indemnitee relationship is derivative of the contracting parties' intended agreement. *See McDonald*, 91 N.C. App. 13, 370 S.E.2d 680; *see also, Terry's Floor Fashions, Inc. v. Georgia-Pacific Corp.*, 36 U.C.C. Rep. Serv. 2d (Callaghan) 680, at *18 (E.D.N.C. 1998), *summary judgment granted*, 39 U.C.C. Rep. Serv. 2d (1999). In *McDonald*, defendant Scarboro broke his contract with

KALEEL BUILDERS, INC. v. ASHBY

[161 N.C. App. 34 (2003)]

plaintiff McDonald to work for codefendant McCary, based on McCary's oral promise to provide an attorney if Scarboro was sued for breach of contract. In that case, this Court found there to be sufficient evidence of an implied-in-fact contract for indemnity when Scarboro testified at trial and in a deposition that McCary had orally agreed to provide an attorney in the event he was sued by plaintiff for breach of contract. Furthermore, Scarboro was an employee of McCary, and the creation of the indemnitor/indemnitee relationship was at the essence of their intent to formulate their contractual master-servant relationship.

While contractual indemnity implied-in-law is a rather discrete legal fiction, North Carolina appellate courts have been consistent as to the elements required which warrant a right of indemnity on this theory. Specifically, the indemnity implied-in-law arises from an underlying tort, where a passive tort-feasor pays the judgment owed by an active tort-feasor to the injured third party. The Supreme Court set this out clearly:

> The old-time judges said that the duty imposed by law upon the actively negligent tort-feasor to reimburse the passively negligent tort-feasor for the damages paid by him to the victim of their joint tort was based on an implied contract, meaning a contract implied in law from the circumstance that the passively negligent tort-feasor had discharged an obligation for which the actively negligent tort-feasor was primarily liable. And this is all the courts mean today when they declare that the right of the passively negligent tort-feasor to indemnity from the actively negligent tort-feasor rests upon an implied contract. There is, of course, in such case no contract implied in fact. This is necessarily so because contracts implied in fact are true contracts based on consent.

*Hunsucker v. Chair Co.*, 237 N.C. 559, 563-64, 75 S.E.2d 768, 771 (1953) (citing *Queen v. DeHart*, 209 N.C. 414, 184 S.E. 7 (1935)); *Montgomery v. Lewis*, 187 N.C. 577, 122 S.E. 374 (1924); *see also Hayes v. Wilmington*, 243 N.C. 525, 91 S.E.2d 673 (1956); and *Cox v. Shaw*, 263 N.C. 361, 139 S.E.2d 676 (1965).

*A. Express Contract*

Plaintiff's complaint alleges no express contractual right, neither written nor oral, of indemnity in the agreements between plaintiff and subcontractors. We next read its claims liberally to see if plain-

tiff sufficiently alleges an implied-in-fact or implied-in-law right to indemnity.

### B. Contract implied-in-fact

In its analysis of the contract implied-in-fact theory of indemnity, the Eastern District of North Carolina, in an unpublished order, *Terry's Floor Fashions*, 36 U.C.C. Rep. Serv. 2d (Callaghan) 680, at *18, offers an instructive analysis of the common law of indemnity in North Carolina. Additionally, in *American Alloy Steel, Inc. v. Armco, Inc.*, 777 S.W.2d 173, 175-76 (Tex. App. 1989), the Texas Court of Appeals held that Texas common law indemnity cases in which there was no underlying tort, recognized an implied-in-fact right of indemnification when a surety or an agency relationship existed between the plaintiff and defendant. Because that court found no such relationship, it affirmed the lower court's grant of summary judgment. While we are neither bound by, nor do we adopt, Texas Law or *Terry's Floor Fashions* interpretation thereof, we find the law of these cases instructive.

In *American Alloy* and *Terry's Floor Fashions*, both courts held that the plaintiffs in those cases were free to negotiate a provision in their contracts to protect themselves from foreseeable future liabilities, and that they had failed to do this. *See American Alloy*, 777 S.W.2d at 175, and *Terry's Floor Fashions*, 36 U.C.C. Rep. Serv. 2d (Callaghan) 680, at *24 (E.D.N.C.).

When deciding whether a contract implied-in-fact existed between plaintiff and subcontractors that would support a potential right to indemnity under that theory, we look to their relationship and its surrounding circumstances. *See McDonald*, 91 N.C. App. 13, 370 S.E.2d 680. Unlike the facts in *McDonald*, the party here praying for indemnity is in neither a master-servant nor agency-type relationship with the subcontractors. Also unlike *McDonald*, plaintiff has not alleged any circumstances tending to show the existence of an indemnification agreement, either written or oral. No matter how liberally we read plaintiff's complaint, we see nothing suggesting more than a number of independent contractor relationships with plaintiff. Furthermore, there is nothing in the allegations that suggests establishing an indemnitor/indemnitee relationship was at the essence or intent of the agreement between plaintiff and the subcontractors.

While we refrain from adopting the limited Texas rule that an implied-in-fact right to indemnity must stem from a surety or an

agency relationship, we hold that plaintiff's allegations in this case do not allege a right to indemnification implied-in-fact in North Carolina. Read liberally, plaintiff's complaint alleges breach of contract and breach of warranty by a number of independent subcontractors. For this Court to read a right of indemnity implied-in-fact into such bald allegations would be to do so in every general and subcontractor agreement, thus infringing upon this state's long standing and coveted principle of freedom of contract.

### C. Contract implied-in-law

At this point in our opinion, we preview what is set out in greater detail below concerning plaintiff's allegations of negligence by the subcontractors in performing their contractual duties. Finding no liberal reading of plaintiff's allegations from which we can recognize a right to indemnity under the theory of contract implied-in-law, we hold plaintiff has stated no allegations in tort for which relief can be granted.

There exists in North Carolina a common law right to indemnification for a passively negligent tort-feasor from an actively negligent tort-feasor, for injuries caused to third parties. *See Edwards v. Hamill*, 262 N.C. 528, 138 S.E.2d 151 (1964). This action for indemnity is usually brought by means of a third party complaint, and is maintained in equity. *Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 332, 293 S.E.2d 182, 187 (1982). In *Edwards*, our Supreme Court stated:

> Primary and secondary liability between defendants exists only when: (1) they are jointly and severally liable to the plaintiff; *and* (2) either (a) one has been passively negligent but is exposed to liability through the active negligence of the other or (b) one alone has done the act which produced the injury but the other is derivatively liable for the negligence of the former.

*Edwards*, 262 N.C. at 531, 138 S.E.2d at 153 (citations omitted) (emphasis added). For indemnification implied-in-law, more an equitable remedy than an action in and of itself, North Carolina law requires there be an underlying injury sounding in tort. The party seeking indemnity must have imputed or derivative liability for the tortious conduct from which indemnity is sought. Plaintiff has alleged nothing that this Court can recognize to make out such a case in equity.

Reading plaintiff's alleged facts as true, they state the following: construction on the Andrettas' house stopped in the fall of 1996 due

to indecision in construction matters; the Andrettas later sought arbitration against plaintiff for alleged defective construction; and the construction complained of includes the work of defendant subcontractors. However, there is no *prima facie* tort case made out to allege negligence not otherwise covered by contractual obligations between the parties. On that basis alone, without determining whether there is sufficient allegations in the complaint of imputed or derivative liability, we hold that plaintiff has not stated a claim for an equitable right under the implied-in-law theory of indemnity.

### II. Negligence and Contribution

[2] In its complaint, plaintiff alleges negligence as a cause of action against each of the named subcontractors. Specifically, the complaint alleges, per subcontractor, negligence in fulfilling its duties and the quality of the services contracted for by plaintiff. Pursuant to this claim in tort, plaintiff seeks contribution.

Plaintiff's complaint acknowledges the contractual relationships between the parties. In accord with the Supreme Court's and our analysis in prior cases, we acknowledge no negligence claim where all rights and remedies have been set forth in the contractual relationship.

North Carolina case law on this issue is clear and long standing. In a previous holding upon facts nearly identical to those *sub judice*, the Supreme Court stated the well-established law: "Ordinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor." *Ports Authority v. Roofing Co.*, 294 N.C. 73, 81, 240 S.E.2d 345 (1978), *rejected in part on other grounds, Trustees of Rowan Tech. v. Hammond Assoc., Inc.*, 313 N.C. 230, 242, 328 S.E.2d 274, 281 (1985). *Ports Authority* sets out four categorical exceptions to this rule, none of which are applicable to the facts pled by plaintiff.[1] *See also Spillman v. American Homes*, 108 N.C. App. 63, 65, 422 S.E.2d 740, 741-42 (1992), where this Court held:

---

1. (1) The injury, proximately caused by the promisor's negligent act or omission in the performance of his contract, was an injury to the person or property of someone other than the promisee. *Pinnix v. Toomey*, 242 N.C. 358, 87 S.E.2d 893 (1955) (Where severe property damage not covered by the contract was caused by the negligence of plumber subcontractor).

(2) The injury, proximately caused by the promisor's negligent, or wilful, act or omission in the performance of his contract, was to property of the promisee other than the property which was the subject of the contract, or was a personal injury to the promisee.

[A] tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to properly perform was due to the negligent or intentional conduct of that party, when the injury resulting from the breach is damage to the subject matter of the contract. It is the law of contract and not the law of negligence which defines the obligations and remedies of the parties in such a situation.

*Id.* (citations omitted).

Because plaintiff has alleged no cause of action in tort, plaintiff's contribution theory of recovery fails as a matter of law. The right of contribution in North Carolina is governed by N.C. Gen. Stat. § 1B-1 (2001), part of the *Uniform Contribution Among Tort-Feasors Act (UCATA)*, stating:

Except as otherwise provided in this Article, where two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.

Under this statute, there is no right to contribution from one who is not a joint tort-feasor. Therefore, by clear language of the statute, plaintiff is not entitled to contribution for a claim sounding only in contract. *See Holland v. Edgerton,* 85 N.C. App. 567, 355 S.E.2d 514 (1987). Without a tort, there can be no tort-feasor; and without a tort-feasor, there can be no right to contribution under the UCATA. Thus, as a matter of law, plaintiff states no claim that could entitle it to any future right to contribution from defendant subcontractors and the trial court's dismissal was proper.

### III. *Breach of Contract and Breach of Warranty*

[3] Plaintiff's complaint alleges both breach of contract and breach of warranty against subcontractors. Any claims from a breach of contract are governed by N.C. Gen. Stat. § 1-52(1) (2001), a three-year statute of limitations. A cause of action based upon breach of a con-

(3) The injury, proximately caused by the promisor's negligent, or wilful, act or omission in the performance of his contract, was loss of or damage to the promisee's property, which was the subject of the contract, the promisor being charged by law, as a matter of public policy, with the duty to use care in the safeguarding of the property from harm, as in the case of a common carrier, an innkeeper or other bailee.

(4) The injury so caused was a wilful injury to or a conversion of the property of the promisee, which was the subject of the contract, by the promisor. *Ports Authority,* 294 N.C. at 82, 240 S.E.2d at 350-51.

tract accrues on the date of the breach, at which time the three years begin to run. *Miller v. Randolph*, 124 N.C. App. 779, 780, 478 S.E.2d 668, 670 (1996). The statute of limitations for breach of warranty is also three years, accruing at breach. *Haywood Street Redevelopment Corp. v. Peterson Co.*, 120 N.C. App. 832, 836, 463 S.E.2d 564, 566 (1995), *disc. review denied*, 342 N.C. 655, 467 S.E.2d 712 (1996).

Plaintiff alleges in its complaint that all construction stopped in the fall of 1996. Any breach of contract or warranty by subcontractors which arose out of its contract with plaintiff was on or before that time. Plaintiff's complaint was not filed until 18 July 2001, nearly five years after any breach by the subcontractors could have occurred and nearly two years after the statute of limitations had run. Alternatively, to the extent plaintiff could argue under the Uniform Commercial Code ("UCC"), which it has not, the triggering date for the statute of limitations for any goods or services provided by a subcontractor is still in or before the fall of 1996. Because the governing statute under the UCC is N.C. Gen. Stat. § 25-2-725, with an applicable limitation period of four years, plaintiff's 18 July 2001 complaint is still time barred.

Therefore, after a liberal reading of the alleged facts of plaintiff's complaint, we conclude that any breach of contract and breach of warranty claim is barred by the statute of limitations.

## Summary Judgment for the Architect

In review of the trial court's grant of summary judgment in favor of the architect, Mr. Duffy, we review *de novo* whether the trial court properly concluded that Mr. Duffy showed, through pleading and affidavits, " 'that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *Bruce-Terminix Co. v. Zurich Ins. Co*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c) (2001)).

Plaintiff seeks indemnity, or in the alternative, contribution from Mr. Duffy. Unlike the subcontractors, Mr. Duffy was in a contractual relationship with the Andrettas. Therefore, the only claim plaintiff may have, and the only claim sought against Mr. Duffy, is in the tort of negligence. While we do not recognize a claim in tort where an underlying contract governs the rights and duties between parties, *see Ports Authority*, 294 N.C. 73, 240 S.E.2d 345, this Court has recognized a cause of action in negligence brought by a general contractor or subcontractor against an architect seeking direct damages:

[W]e hold that an architect in the absence of privity of contract may be sued by a general contractor or the subcontractors working on a construction project for economic loss foreseeably resulting from breach of an architect's common law duty of due care in the performance of his contract with the owner. It is true that neither the general contractor nor the subcontractors could maintain a cause of action against the architects grounded on negligent performance of the architects' contract with New Hanover County.

*Davidson and Jones, Inc. v. County of New Hanover*, 41 N.C. App. 661, 667, 255 S.E.2d 580, 584, *cert. denied*, 298 N.C. 295, 259 S.E.2d 911 (1979). In that case, we reversed the lower court's grant of summary judgment.

The stipulated period when construction on the Andretta house stopped was in the fall of 1996. The statute of limitations for a claim in negligence is three years under N.C. Gen. Stat. § 1-52(5) (2001), and plaintiff brought this action on 21 July 2001. Plaintiff does not allege in theory or in fact, that discovery of Mr. Duffy's alleged negligence was sometime after the stop date of the construction. We therefore need not consider the potential claim that a later discovery of the negligence tolled the statute, preserving a direct claim for damages in negligence.

Plaintiff alleges that its claim in negligence survives the statute of limitations because its theory of recovery is in either indemnity or contribution. We find there to be no issue of fact which would allow recovery under either of these theories, and for the reasons below affirm the trial court's grant of summary judgment.

### I. Contribution

[4] As discussed above in this opinion, contribution is a statutory right of relief in North Carolina, governed by the *Uniform Contribution Among Tort-Feasors Act*, N.C. Gen. Stat. § 1B-1 (2001). The right is applicable only between joint tort-feasors. *Roseboro Ford, Inc. v. Bass*, 77 N.C. App. 363, 335 S.E.2d 214 (1985). Our Supreme Court has defined joint tort-feasors as parties whose negligent or wrongful acts are united in time or circumstance such that the two separate acts concur to cause a single injury to a third party. *State Farm Mut. Auto Ins. Co. v. Holland*, 324 N.C. 466, 470, 380 S.E.2d 100, 103 (1989). Therefore, in reading plaintiff's pleadings and supporting affidavits liberally, we must find at least some issue of fact

as to whether plaintiff and Mr. Duffy jointly caused a tortious injury to the Andrettas.

Mr. Duffy is in contractual privity with the Andrettas; plaintiff is in contractual privity with the Andrettas. Therefore, as to the subject matter of the contract and performance thereunder in these two relationships, the contract governs, and we recognize no injuries sounding in tort flowing from either Mr. Duffy or plaintiff to the Andrettas. The contract provides the grounds for relief. *See Ports Authority*, 294 N.C. 73, 240 S.E.2d 345, and the discussion above. The only negligence claim alleged here is the discrete form of negligence flowing from an architect directly to a general contractor which this Court recognized in *Davidson and Jones, Inc.* This direct action provides a form of relief when contractual privity is otherwise lacking.

Therefore, we find no issue of fact as to whether Mr. Duffy and plaintiff are joint tort-feasors, and plaintiff therefore has no statutory right to contribution from Mr. Duffy. There is only one tort alleged and supported by the facts before us, that between general contractor plaintiff and architect Mr. Duffy. This direct action, however, is clearly barred by the statute of limitations. Thus, the trial court properly granted summary judgment on the issue of contribution.

*II. Indemnification*

[5] Applying our analysis as to the bases for indemnification in North Carolina, we hold plaintiff has neither pled, alleged or provided facts to create any issue of fact as to whether there is an express contract or a contract implied-in-fact with Mr. Duffy as there is no contractual privity between the two. Thus, those routes to a right of indemnity have been foreclosed.

Plaintiff has alleged, and supported with good case law, a discrete common law tort between a general contractor and an architect specifically applicable where there is no contractual relationship between the two. *See Davidson and Jones, Inc.*, 41 N.C. App. 661, 255 S.E.2d 580. However, plaintiff has not alleged any tort flowing to the Andrettas from either he or Mr. Duffy. North Carolina recognizes an implied-in-law right to indemnity when a passive party is made liable for an active party's tortious conduct flowing to and injuring a third party. *Edwards*, 262 N.C. at 531, 138 S.E.2d at 153. But again, as was made clear in our contribution analysis above, there is only one tort recognized by our Court which has been raised by plaintiff's factual allegations and that tort flows *directly* from an architect to a general contractor. Mr. Duffy is accountable to the Andrettas in his contract

with them, as is plaintiff. *See Ports Authority,* 294 N.C. 73, 240 S.E.2d 345. Therefore, the parties do not fit the active-passive tort-feasor framework required to support an equitable right to indemnity implied-in-law as the Andrettas have no claim in tort against either plaintiff or Mr. Duffy.

The only tortious conduct alleged does not even flow to the Andrettas, but to plaintiff as a general contractor. The statute of limitations, however, has run on this claim and plaintiff is barred from relief.

Plaintiff had legally recognizable claims in contract against the subcontractors, and in tort against Mr. Duffy. These were direct claims, and it is undisputed that the three-year statute of limitations has run on them. Plaintiff has failed to allege facts or circumstances which would provide relief under the theories of contribution or indemnity. Therefore, after reading the briefs, the record, and all facts and allegations in the light most favorable to plaintiff, we agree with the trial court's dismissal of plaintiff's claims against the sub-contractors, and grant of summary judgment in favor of Mr. Duffy. We thus affirm.

Affirmed.

Judges TIMMONS-GOODSON and HUDSON concur.