JOHNNY WILLIAMS AND WIFE, SARAH WILLIAMS, PLAINTIFF V. HOUSES OF DISTINCTION, INC., DEFENDANT

No. COA10-30

(Filed 21 June 2011)

**1. Construction Claims— Contractual obligations—exceptions inapplicable—summary judgment proper**

The trial court did not err in a negligence action by granting summary judgment in favor of defendant with respect to its negligence claims. Plaintiffs' negligence-based claims stemmed from defendant's allegedly deficient performance of its contractual obligations to plaintiffs and none of the Ports Authority exceptions were applicable.

**2. Construction Claims— breach of contract—breach of warranty—statute of limitations—date statute began to run in dispute—summary judgment erroneous**

The trial court erred in a breach of contract and breach of warranty action by granting summary judgment in favor of defendant based on the plea of the statute of limitations. The point in time at which the construction defects in question became or should have become apparent to plaintiffs was genuinely in dispute between the parties, so that the date upon which the statute of limitations began to run should have been decided by a jury at trial rather than by the court as a matter of law.

**3. Appeal and Error— issue not addressed—estoppel— statute of limitations**

Plaintiffs' argument in a construction case that defendant should have been estopped from asserting the statute of limita-

1

**WILLIAMS v. HOUSES OF DISTINCTION, INC.**

[213 N.C. App. 1 (2011)]

tions as a bar to plaintiffs' claims was not addressed in light of the Court of Appeals' conclusion that the trial court erred in granting summary judgment with respect to plaintiffs' breach of contract and warranty claims.

Appeal by plaintiffs from order entered 14 October 2009 by Judge Ola Lewis in Brunswick County Superior Court. Heard in the Court of Appeals 26 May 2010.

*Block, Crouch, Keeter, Behm & Sayed, L.L.P. by Auley M. Crouch, III and Emily A. McNamara, for plaintiffs-appellants.*

*The Del Ré Law Firm, PLLC, by Benedict J. Del Ré Jr., for defendants-appellees.*

ERVIN, Judge.

Plaintiffs Johnny and Sarah Williams appeal from a trial court order granting summary judgment in favor of Defendant Houses of Distinction, Inc. After careful consideration of Plaintiffs' challenges to the trial court's decision in light of the record and applicable law, we conclude that the trial court's order should be affirmed in part and reversed in part and that this case should be remanded to the Superior Court of Brunswick County for further proceedings not inconsistent with this opinion.

## I. Procedural History

On 30 October 2008, Plaintiffs filed a complaint against Defendant in which Plaintiffs alleged that Defendant acted negligently and committed breaches of contract and warranty in connection with the construction of a house located on an ocean front lot owned by Plaintiffs at Ocean Isle Beach. According to Plaintiffs' complaint, Defendant:

b. selected windows and doors that were not suitable for the location of the residence;

c. failed to adequately flash or improperly flashed the residence;

d. installed the decking membrane improperly;

e. installed improperly all decking boards in violation of the manufacturers's installation instructions;

f. installed the vinyl siding and trim improperly;

**WILLIAMS v. HOUSES OF DISTINCTION, INC.**

[213 N.C. App. 1 (2011)]

g. installed stucco located on the lower level of the residence improperly;

h. constructed and installed stairs and other structural components improperly; and

i. used metal fasteners that were not suitable for the environmental conditions existing at the residence's location.

In its answer, Defendant moved to dismiss Plaintiffs' complaint for failure to state a claim for which relief could be granted pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6); denied the material allegations of Plaintiffs' complaint; and asserted several affirmative defenses, including a contention that Plaintiffs' claims were barred by the applicable statute of limitations. On 23 September 2009, Defendant filed a motion for summary judgment that was accompanied by supporting affidavits and other materials predicated on its contention that Plaintiffs' claims were time-barred. On 6 October 2009, Plaintiffs filed a response to Defendant's summary judgment motion that was also accompanied by supporting affidavits and related materials. On 14 October 2009, the trial court entered an order granting Defendant's summary judgment motion and dismissing all of Plaintiffs' claims with prejudice. **[R 94]** Thereafter, Plaintiffs noted an appeal to this Court from the trial court's order.[1]

## II. Legal Analysis

### A. Standard of Review

On appeal, Plaintiffs contend that the trial court erred by granting Defendant's motion for summary judgment. A trial court appropriately grants a motion for summary judgment when the information contained in any depositions, answers to interrogatories, admissions, and affidavits presented for the trial court's consideration, viewed in the light most favorable to the non-movant, demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Whisnant v. Carolina Farm Credit*, —— N.C. App. ——, ——, 693 S.E.2d 149, 152 (2010). " 'It has been said that an issue is material if the facts alleged are such as to constitute a legal defense or are of such nature as to affect the result of the action, or if the resolution of the issue is so essential that the party against whom it is resolved may not prevail.' " *Kessing v. National Mortgage*

---

1. The factual information needed to understand and evaluate the legal issues before the Court in this case is stated in the course of our substantive opinion rather than in a separate statement of facts appearing at the beginning of this opinion.

*Corp.*, 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971) (quoting 3 Barron and Holtzoff, *Federal Practice and Procedure* § 1234 (Wright ed. 1958)). "[I]n ruling on a motion for summary judgment[,] the court does not resolve issues of fact and must deny the motion if there is any issue of genuine material fact." *Singleton v. Stewart*, 280 N.C. 460, 464, 186 S.E.2d 400, 403 (1972) (citations omitted). "A party moving for summary judgment under [N.C. Gen. Stat. § 1A-1,] Rule 56 has the burden of 'clearly establishing the lack of any triable issue of fact by the record properly before the court,' " so that " '[h]is papers are carefully scrutinized; and those of the opposing party are on the whole indulgently regarded.' " *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975) (quoting 6 J. Moore, *Moore's Federal Practice* § 56.15[8] (2d ed. 1971), and citing *Singleton*, 280 N.C. at 465, 186 S.E.2d at 403). According to well-established North Carolina law, summary judgment is appropriate when "a claim or defense is utterly baseless in fact" or "where only a question of law on the indisputable facts is in controversy." *Kessing*, 278 N.C. at 533, 180 S.E.2d at 829 (citing 2 McIntosh, *N.C. Practice and Procedure* § 1660.5 (2d ed., Phillips' Supp. 1970) and 3 Barron and Holtzoff § 1234). As a general proposition, "an order [granting summary judgment] 'based on the statute of limitations is proper when, and only when, all the facts necessary to establish the limitation are alleged or admitted, construing the non-movant's pleadings liberally in his favor and giving him the benefit of all relevant inferences of fact to be drawn therefrom.' " *Spears v. Moore*, 145 N.C. App. 706, 708, 551 S.E.2d 483, 485 (2001) (quoting *Huss v. Huss*, 31 N.C. App. 463, 468, 230 S.E.2d 159, 163 (1976)). An order granting summary judgment is, in turn, reviewed *de novo* by this Court. *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007).

### B. Substantive Legal Analysis

### 1. Negligence Claims

[1] On appeal, Plaintiffs contend that the trial court erred by granting summary judgment in favor of Defendant with respect to their negligence claims. We disagree.

As this Court has stated, "no negligence claim [exists] where all rights and remedies have been set forth in the contractual relationship." *Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 42, 587 S.E.2d 470, 476 (2003), *disc. review denied*, 358 N.C. 235, 595 S.E.2d 152 (2004); *see also Ports Authority v. Roofing Co.*, 294 N.C. 73, 81, 240 S.E.2d 345, 350 (1978) (stating that, "[o]rdinarily, a breach of contract

WILLIAMS v. HOUSES OF DISTINCTION, INC.

[213 N.C. App. 1 (2011)]

does not give rise to a tort action by the promisee against the promisor") (citations omitted), *rejected in part on other grounds*, *Trustees of Rowan Tech. v. Hammond Assoc., Inc.*, 313 N.C. 230, 242, 328 S.E.2d 274, 281 (1985); *Spillman v. American Homes*, 108 N.C. App. 63, 65, 422 S.E.2d 740, 74142 (1992) (citing *Ports Authority*, 294 N.C. at 83, 240 S.E.2d at 351); *Warfield v. Hicks*, 91 N.C. App. 1, 910, 370 S.E.2d 689, 694, *disc. review denied*, 323 N.C. 629, 374 S.E.2d 602 (1988). In *Ports Authority*, the Supreme Court enumerated four exceptions to this general rule, explaining that a negligence claim will lie, despite the existence of a contract between the parties, when:

(1) The injury, proximately caused by the promisor's negligent act or omission in the performance of his contract, was an injury to the person or property of someone other than the promisee.

(2) The injury, proximately caused by the promisor's negligent, or wilful, act or omission in the performance of his contract, was to property of the promisee other than the property which was the subject of the contract, or was a personal injury to the promisee.

(3) The injury, proximately caused by the promisor's negligent, or wilful, act or omission in the performance of his contract, was loss of or damage to the promisee's property, which was the subject of the contract, the promisor being charged by law, as a matter of public policy, with the duty to use care in the safeguarding of the property from harm, as in the case of a common carrier, an innkeeper or other bailee.

(4) The injury so caused was a wilful injury to or a conversion of the property of the promisee, which was the subject of the contract, by the promisor.

*Ports Authority*, 294 N.C. at 82, 240 S.E.2d at 350-51 (internal citations omitted).

In their complaint, Plaintiffs alleged that Defendant agreed "to provide all materials" and "to construct [the home] in a good and workmanlike manner" in the contract providing for the construction of Plaintiffs' residence. In an attempt to establish that they were entitled to a negligence-based recovery from Defendant, Plaintiffs further alleged that:

17. Defendant owed a duty to Plaintiffs to build the residence with the care and skill necessary to meet the standard of good and workmanlike quality as promised by Defendant.

18. Defendant breached its duty and was negligent in the construction of the residence in that it:

a. Failed to select and install appropriate windows and doors for use in the residence;

b. Failed to comply with all manufacturers' installation specifications and instructions;

c. Failed to correct all defective conditions; and

d. Failed to make proper repairs leading Plaintiffs to believe that Defendant had repaired various defects when Defendant had failed to do so.

19. As a direct and proximate result of Defendant's negligence, Plaintiffs have been damaged in an amount exceeding $10,000.00 and include those categories of damages enumerated in paragraph 15.

Each of the contentions of negligence recited in Plaintiffs' complaint relate back to, and ultimately hinge on, Defendant's alleged failure to adequately honor its contractual obligation "to furnish all materials and equipment and to perform or furnish all labor to construct in a good and workmanlike manner." As a result, Plaintiffs' negligence claims stem from Defendant's alleged failure "to properly perform the terms of the contract," and thus "the injury resulting from the breach is damage to the subject matter of the contract." *See Kaleel,* 161 N.C. App. at 42-43, 587 S.E.2d at 476 (quoting *Spillman v. American Homes,* 108 N.C. App. 63, 65, 422 S.E.2d 740, 741-42 (1992)). Furthermore, we are unable to conclude that any of the four exceptions set out in *Ports Authority* apply to the negligence-based claims asserted in Plaintiff's complaint. Because Plaintiffs' negligence-based claims stem from Defendant's allegedly deficient performance of its contractual obligations to Plaintiffs and since none of the *Ports Authority* exceptions are applicable given the facts before us in this case, we conclude that Plaintiffs have no valid negligence claims against Defendant and that the trial court properly granted summary judgment in favor of Defendant with respect to these claims.

### 2. Breach of Contract and Warranty Claims

[2] Secondly, Plaintiffs contend that the trial court erred by granting summary judgment in favor of Defendant with respect to their breach of contract and breach of warranty claims.[2] We agree.

---

2. The parties do not, in their briefs, distinguish between the defects in or damage that Plaintiffs allegedly sustained to the windows, doors, flashing, deck membrane,

**WILLIAMS v. HOUSES OF DISTINCTION, INC.**

[213 N.C. App. 1 (2011)]

According to N.C. Gen. Stat. § 1-52, actions for breach of contract and breach of warranty are subject to a three-year statute of limitations, with claims arising from damage to the plaintiff's property beginning to run from the point at which "physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs." N.C. Gen. Stat. § 1-52 (16).

> The primary purpose of N.C. Gen. Stat. § 1-52(16) is that it is intended to apply to plaintiffs with latent injuries. Specifically, § 1-52(16) protect[s] a potential plaintiff in the case of a latent injury by providing that a cause of action does not accrue until the injured party becomes aware or should reasonably have become aware of the existence of the injury. [A]s soon as the injury becomes apparent to the claimant or should reasonably become apparent, the cause of action is complete and the limitation period begins to run.

*Soderlund v. Kuch*, 143 N.C. App. 361, 370, 546 S.E.2d 632, 638, *disc. review denied*, 353 N.C. 729, 551 S.E.2d 438 (2001) (internal quotation marks and citations omitted). Therefore, a cause of action for breach of contract or breach of warranty arising from damage to a plaintiff's property accrues, and the statute of limitations period begins to run, as soon as damage becomes or should have become apparent, with damage occurring after the date upon which the plaintiff's claim accrues constituting nothing more than an aggravation of the original injury that does not operate to restart the applicable limitations period. *ABL Plumbing & Heating Corp. v. Bladen Cty. Bd. of Educ.*, 175 N.C. App. 164, 168, 623 S.E.2d 57, 59 (2005) (citing *Liptrap v. City of High Point*, 128 N.C. App. 353, 355, 496 S.E.2d 817, 819, *disc. review denied*, 348 N.C. 73, 505 S.E.2d 873 (1998)), *disc. review denied*, 360 N.C. 362, 629 S.E.2d 846 (2006). As a result, Plaintiffs had three years from the point in time at which the damage to their home became initially apparent or reasonably should have become appar-

---

water sills, decking boards, vinyl siding, stucco, and stairs. For that reason, we have discussed the statute of limitations issue raised by Plaintiffs' appeal from the trial court's order on the basis of an assumption that Plaintiffs' entire claim against Defendant accrued at a single time. However, the record does not clearly demonstrate that the alleged defects in or damage to the decking boards, vinyl siding, stucco, and stairs associated with Plaintiffs' residence is in any way related to the leaking associated with the water intrusion that occurred around the doors and windows. As a result, even if we were to determine that the intermittent leaks that Plaintiffs experienced around certain doors and windows triggered the running of the applicable statute of limitations with respect to water-related damage to Plaintiffs' residence, those aspects of Plaintiffs' claim stemming from damage to the decking boards, vinyl siding, stucco, and stairs would not have been time-barred as a matter of law.

ent within which to file claims alleging breach of contract and breach of warranty against Defendant.

"Ordinarily, the bar of the statute of limitations is a mixed question of law and fact." *Yancey v. Watkins*, 17 N.C. App. 515, 519, 195 S.E.2d 89, 92, *cert. denied*, 283 N.C. 394, 196 S.E.2d 277 (1973). Only when "the law is properly pleaded and *all the facts with reference thereto are admitted* [does] the question of limitations become[] a matter of law." *Id.* (citations omitted) (emphasis in the original). On the other hand, "where the facts are in doubt or in dispute and there is any evidence sufficient to justify the inference that the cause of action is not barred, the trial court may not withdraw the case from the jury." *Solon Lodge v. Ionic Lodge*, 247 N.C. 310, 317, 101 S.E.2d 8, 13 (1957) (citing *Garrett v. Stadiem*, 220 N.C. 654, 18 S.E.2d 178 (1942), *Majette v. Hood, Com'r of Banks*, 208 N.C. 824, 179 S.E. 23 (1935), and *Fort Worth R.R.*, 198 N.C. 309, 151 S.E. 641 (1930)); *see also Hatem v. Bryan*, 117 N.C. App. 722, 724, 453 S.E.2d 199, 201 (1995) (stating that, "[w]hen . . . the evidence is sufficient to support an inference that the limitations period has not expired, the issue should be submitted to the jury") (citations omitted); *Yancey*, 17 N.C. App. at 520, 195 S.E.2d at 93 (holding that the issue of whether the statute of limitations had expired was "properly submitted to the jury" when "all the facts with respect to the statute of limitations were not admitted and [] more than one inference could be drawn from the evidence"). Thus, in the event that any fact relating to the issue of whether Plaintiffs' claims were time-barred was subject to legitimate dispute, such a factual issue is properly submitted to the jury rather than being resolved during consideration of a summary judgment motion.

At the beginning of any attempt to analyze the merits of an issue such as the one before us in this case, which is focused on determining the appropriateness "of [a grant of summary judgment] based on the plea of the statute of limitations," it is important to note that "it would serve no useful purpose . . . to restate the evidence favorable to [the movant]," since our decision "requires only that we determine whether the [nonmovant's] evidence was sufficient to show *prima facie* that their cause of action was not barred." *Solon Lodge*, 247 N.C. at 317, 101 S.E.2d at 13. In this case, the evidence, when taken in the light most favorable to the Plaintiffs, discloses that, on 18 May 2002, Plaintiffs entered into a contract with Defendant pursuant to which Defendant agreed to construct a house on an ocean front lot owned by Plaintiffs in Ocean Isle Beach, North Carolina; to "furnish all materials and equipment;" and "to perform or furnish all labor . . . in a good

**WILLIAMS v. HOUSES OF DISTINCTION, INC.**

[213 N.C. App. 1 (2011)]

and workmanlike manner." Acting in reliance upon the advice of Thomas C. Coyte, Defendant's President, Plaintiffs selected Weather Shield windows and doors for installation in the home. Subsequently, Weather Shield products were purchased and installed in the Plaintiffs' home by either Defendant or its subcontractors. Although Plaintiffs took possession of their newly-constructed home in April 2003, they did not reside there full time because it was a "vacation and retirement home" rather than their principal residence.

Shortly after moving into the home in 2003, Plaintiffs noticed water leaking in through the doors located on the second level. Plaintiffs reported this development to Defendant, who, in turn, dispatched a subcontractor to the Plaintiffs' residence and ultimately informed Plaintiffs, either personally or through its subcontractor, that the needed repairs had been made. While at the Plaintiffs' residence, Defendant's subcontractor covered the doors through which water appeared to be leaking with a plastic film, sprayed the perimeter of the covered area with a hose, and explained to Plaintiffs that "the purpose of his 'test' was to show that the installation of the door units was not the problem."

In early 2004, a broken window on the second level of the residence was reported by Plaintiffs to Defendant who, in turn, referred the issue to the distributor. In August of 2004, shortly after the distributor replaced the second floor window, Plaintiffs noted the presence of water damage in the area surrounding the replaced window. Although no repairs appear to have been made as a result of this leak, Plaintiffs saw no additional evidence of leaking in or around the window in either 2005, 2006 or 2007.

In late 2005, Plaintiffs discovered that water was once again entering the home through the second-level doors despite the fact that they had been informed by Defendant that this problem had been remedied in 2003. In response to this information, either Defendant or its subcontractor informed Plaintiffs in 2006 that "they were going to figure out the problem and fix it." A representative of Defendant's subcontractor made repairs to the doors and windows on 2 February 2006 and 10 February 2006. Upon completing these repairs, the representative told Plaintiffs that "[t]hat ought to do it." Throughout this period of time, Plaintiffs were "confident" that Defendant was making "every effort to fix" the issues related to water leaking into their home. The 2006 repairs appeared to have been successful, since Plaintiffs did not note any additional water issues relating to the second floor doors during the remainder of 2006 and 2007.

In 2007, Plaintiffs observed a water stain on the ceiling of a guest bedroom. Once again, Plaintiffs informed Defendant about the problem, and Defendant dispatched a subcontractor to make the necessary repairs. In March of 2008, Plaintiffs noticed water leaking in through the same window at which they had experienced problems in 2004, causing them to employ R.V. Buric Construction Consultants, PC, to examine their home. Shortly thereafter, Buric Construction inspected Plaintiffs' home and provided Plaintiffs with a report detailing the various construction defects that it believed to exist in the structure. Based on this evidence, Plaintiffs argue that the defects underlying their breach of contract and warranty claims "became apparent or should reasonably have become apparent" no earlier than March of 2008.[3]

On the contrary, Defendant argues that Plaintiffs became or should have become aware of the damage complained of in 2003, more than six years before filing their complaint and well beyond the applicable statute of limitations period. In support of this conclusion, Defendant cites *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 329 S.E.2d 350 (1985), a case in which the Supreme Court was required to determine when the statute of limitations began to run in connection with a claim stemming from the defective installation and construction of a roof. In *Pembee*, the defendants entered into a contract to construct a manufacturing building for the plaintiff. *Pembee*, 313 N.C. at 489, 329 S.E.2d at 351-52. Two months after occupying the building in 1973, the plaintiff discovered numerous leaks in the roof, as a result of which the defendants made some repairs to the roof. *Id.* at 489, 329 S.E.2d at 352. Some years later, over a five month period beginning in late 1976, the plaintiff complained of leaks in "many spots" in the roof. *Id.* In April 1980, the plaintiff hired an engineer, who examined the roof and discovered " 'blistering' throughout the entire roof which resulted from the entrapment of moisture in the several layers of roofing material." *Id.* at 490, 329 S.E.2d at 352. In November 1981, the plaintiff filed a complaint against the defendants alleging breach of contract, negligence, and unjust enrichment. *Id.* In June 1983, the trial court entered summary judgment in defendants' favor based on the determination that the plaintiff's claims were barred by the applicable statute of limitations. *Id.*

---

3. Although the record reveals that a letter was sent by the distributor to Defendant in 2006 asserting that the problems that Plaintiffs were experiencing with their home resulted from construction defects, the record also contains evidence tending to show that Plaintiffs did not learn of the existence of this letter until 2008.

The Supreme Court characterized the leaks in *Pembee* as "discovered and recurr[ing] repeatedly" and, based on these "undisputed facts," held that the plaintiff, "although perhaps not aware of the extent of [the] damage, knew that its roof was defective." *Id.* at 493, 328 S.E.2d at 354. The plaintiff's awareness of the existence of this defect put the plaintiff "on inquiry as to the nature and extent of the problem," so that the statute of limitations began to run as to all related claims by at least 1977. *Id.* The plaintiff in *Pembee* did not dispute the date upon which it became aware of the defective roof; instead, the issue actually in dispute in *Pembee* revolved around whether "a distinction should be made between the leaks in the roof and the blistering caused by entrapment of moisture." *Id.* The Supreme Court declined to recognize the validity of the distinction and held that the plaintiff's entire claim was time-barred. *Id.* at 493-94, 329 S.E.2d at 354-55.

We are not persuaded that *Pembee* controls the outcome of this case, since we do not believe that Plaintiffs were necessarily put on notice of the alleged defects in the doors and windows of their residence in the same manner and to the same extent as was the plaintiff in *Pembee*. In *Pembee*, the plaintiff became aware of multiple leaks in its building within months of occupancy and lodged a series of complaints reporting "leaks in many spots" several years later. *Id.* at 493, 329 S.E.2d at 354. In its opinion affirming the trial court's decision to grant summary judgment in favor of the defendant, the Supreme Court described the leaks as "recurr[ing] repeatedly." *Id.* In this case, on the other hand, the record shows that only a handful of leaks occurred on an intermittent basis over the course of several years and that, in almost every instance, Plaintiffs had been assured that these leaks had been corrected. Although these differences between the facts before the Supreme Court in *Pembee* and the facts at issue here may seem minor, small points may prove determinative in resolving fact-specific issues such as the one before us here.

An example of the importance of such factual differences can be seen in the *Pembee* Court's hesitance to conclude that the first round of leaks, which occurred immediately after the plaintiff occupied the allegedly defective building, was sufficient to start the running of the statute of limitations. Instead, the Court merely concluded that "the fact that [the roof] was defective was apparent at least by April 1977"— several years into plaintiff's occupancy of the building and after the occurrence of a five month period in which the plaintiff reported numerous leaks. *Id.* at 494, 329 S.E.2d at 355. As a result, based upon a close reading of *Pembee*, we are unable to conclude, as the Court in

*Pembee* did, that there is no genuinely disputed factual issue concerning whether Plaintiffs "clearly knew" of the construction-related defects underlying their claims against Defendant at a sufficiently early date to render their claims time-barred as a matter of law.[4]

On the contrary, it appears to us that our decision in *Baum v. John R. Poore Builder, Inc.*, 183 N.C. App. 75, 643 S.E.2d 607 (2007), is more relevant to the proper resolution of this case. The plaintiffs in *Baum* first noted the presence of cracked tiles on the deck connected to their residence in June of 2000. *Baum*, 183 N.C. App. at 77-78, 643 S.E.2d at 609. After they reported the existence of these cracks to the defendant, the plaintiffs were told to contact the tile company directly, resulting in the performance of certain repairs and the giving of assurances that there were no structural problems in the plaintiffs' deck. *Id.* In this case, the record contains evidence tending to show that Plaintiffs noticed and reported leaks in the residence's windows and doors to Defendant, who, in turn, had some repairs performed and instructed Plaintiffs to contact the distributor directly in order to obtain the performance of other repairs. Plaintiffs followed Defendant's directive, leading to the making of repairs and the giving of assurances that the root of the problem that Plaintiffs were experiencing stemmed from the products utilized during the construction of the residence rather than the manner in which the residence had been constructed and the relevant products installed. In *Baum*, we held that, "viewing the evidence submitted to the trial court in the light most favorable to [the plaintiffs'] position," the facts did not establish that the statute of limitations had run as a matter of law, since "at least an inference can be drawn that the limitations period [did not begin to run in June 2000, and therefore] the issue [was] for the jury to determine." *Id.* at 82, 643 S.E.2d at 611-12. Given the similarities between the facts at issue in *Baum* and the facts at issue here, we conclude that, in this case, as in *Baum*, we are faced with a "genuine issue[] of material fact as to when Plaintiffs knew or reasonably should have known about the damage . . . , such that the evidence was sufficient on the question of when the three-year statute of limitations began to run to submit the issue to a jury for determination." *Id.* at 81, 643 S.E.2d at 611.

---

4. Similarly, we believe that Defendant's reliance on our decision in *Blue Cross and Blue Shield v. Odell Associates*, 61 N.C. App. 350, 358, 301 S.E.2d 459, 464, *disc. review denied*, 309 N.C. 319, 306 S.E.2d 791 (1983), is misplaced given the "repeated failures of the glass panels over the next few months" after the initial discovery of a problem with one of the panels.

Additionally, we find *Everts v. Parkinson*, 147 N.C. App. 315, 555 S.E.2d 667 (2001), a decision cited in Plaintiffs' brief, helpful to a proper resolution of the issue before us. In *Everts*, we held that the defendants "were not entitled to summary judgment on the basis of the statute of limitations because the facts [were] in conflict as to when the statute of limitations period started to run." *Everts*, 147 N.C. App. at 319, 555 S.E.2d at 670-71. The plaintiffs in *Everts* noticed "water intrusion" into both their garage and living room within three months after they purchased their home from the defendants. *Id.* at 320, 555 S.E.2d at 671. Sometime thereafter, the plaintiffs were informed by their painter that, given his experience in working on the home while it was owned by the defendants, he had developed the opinion that the home had " 'water problems.' " *Id.* The Court disagreed with defendants' contention that these two facts put the plaintiffs on notice of the damage to their residence, concluding, instead, that a jury might reasonably determine that the limitations period began to run at the time that the plaintiffs received an expert report alerting them to the issues underlying the claim asserted in their complaint. *Id.* at 320-21, 555 S.E.2d 16 671. In *Everts*, as in *Baum*, we refused to hold that the fact that a plaintiff observed damage, regardless of whether it consisted of cracked tiles or water intrusion, established that the plaintiff's claim was time-barred as a matter of law.

In light of our analysis of these decisions, we conclude that, when the record is considered in the light most favorable to Plaintiffs, there is a genuine issue of material fact as to when physical damage to Plaintiffs' home sufficient to put Plaintiffs on notice of the existence of their claims against Defendant became apparent or ought reasonably to have become apparent to Plaintiffs. *See* N.C. Gen. Stat. § 1-52 (16). As a result, the point in time at which the defects in question became or should have become apparent to Plaintiffs is genuinely in dispute between the parties, so that the date upon which the statute of limitations began to run should be decided by a jury at trial rather than by the court as a matter of law in connection with its consideration of a motion for summary judgment. Thus, we conclude that the trial court erred by granting summary judgment in favor of Defendant with respect to Plaintiffs' breach of contract and breach of warranty claims.

### 3. Estoppel

[3] Finally, Plaintiffs contend that Defendant is estopped from asserting the statute of limitations as a bar to Plaintiffs' claims based on the actions, representations and conduct of Defendant and its sub-

contractors. In view of our conclusion that the trial court erred in granting summary judgment with respect to Plaintiffs' breach of contract and warranty claims, there is no need for us to address this argument, and we decline to do so.

## III. Conclusion

As a result, based on our conclusion that Plaintiffs' negligence claims stemmed from the performance of a contractual obligation, we conclude that that portion of the trial court's order granting summary judgment in favor of Defendant with respect to Plaintiffs' negligence-based claims should be affirmed. However, in light of our conclusion that the record discloses the existence of a genuine issue of material fact with respect to whether Plaintiffs knew or should reasonably have known of the construction-related defects in their residence more than three years prior to the filing of their complaint, we find that the trial court erred in determining that Plaintiffs' breach of contract and breach of warranty claims were time-barred as a matter of law. Instead, the date upon which the defects in question became or should have become apparent to Plaintiffs constitutes an issue of fact that should be resolved by the jury at trial, with the jury's answer to that question treated as determinative of the merits of Defendant's statute of limitation defense. Thus, we affirm the trial court's order in part and reverse the trial court's order in part and remand this case to the Brunswick County Superior Court for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

Judges McGEE and STROUD concur.