Kingsdown, Inc. v. Hinshaw, 2015 NCBC 28.

STATE OF NORTH CAROLINA

ALAMANCE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 1701

KINGSDOWN, INCORPORATED,

        Plaintiff,

v.

W. ERIC HINSHAW, REBECCA
HINSHAW, and ANNE RAY,

        Defendants.

ANNE RAY,

        Third-Party Plaintiff,

v.

FRANK HOOD, THOMAS I. McLEAN,
GLENDEL STEPHENSON, WILLIAM
S. PEARSON, WAYNE E. TUMLIN,
TUGGLE DUGGINS P.A., and JOHN
DOE,

        Third-Party Defendants.

ORDER AND OPINION
ON MOTIONS CONCERNING
DEFENDANT ANNE RAY

{1}    **THIS MATTER** is before the Court on (i) Defendant Anne Ray's ("Ms. Ray")
Motion to Dismiss Plaintiff's Amended Complaint under Rules 12(b)(6) ("Ray's Rule
12(b)(6) Motion") and 12(b)(3) ("Ray's Rule 12(b)(3) Motion"), (ii) Defendant Anne
Ray's Motion for More Definite Statement ("Ray's Rule 12(e) Motion for More Definite
Statement") (collectively, "the Ray Rule 12 Motions"),[1] (iii) Plaintiff Kingsdown,
Incorporated's ("Plaintiff," "Kingsdown" or the "Company") Motion to Dismiss the
Counterclaims of Defendant Anne Ray, (iv) Third-Party Defendants Frank Hood,
Thomas I. McLean, Glendel Stephenson, William S. Pearson, and Wayne E. Tumlin's

---

[1] During the March 11, 2015 hearing in this matter, the Court ruled from the bench that it intended
to deny Ray's Rule 12(b)(6) Motion, Ray's Rule 12(b)(3) Motion, and Ray's Rule 12(e) Motion for More
Definite Statement and that it would enter this formal Opinion and Order denying these motions.

(collectively, "Individual Third-Party Defendants") Motion to Dismiss Third-Party Complaint ("Individual Third-Party Defendants' Motion to Dismiss Third-Party Complaint") and (v) Third-Party Defendant Tuggle Duggins, P.A.'s ("Tuggle Duggins" or the "Firm") Motion to Dismiss Third-Party Complaint ("Tuggle Duggins' Motion to Dismiss Third-Party Complaint") and for Attorney's Fees Pursuant to N.C. Gen. Stat. § 75-16.1 ("Tuggle Duggins' Motion for Attorney's Fees").[2]

{2} **THE COURT**, having considered the parties' Motions, briefs in support of and in opposition to the Motions, appropriate matters of record, and the arguments of counsel made at the March 11, 2015 hearing held in this matter, hereby **DENIES** the Ray Rule 12 Motions, **GRANTS** Kingsdown's Motion to Dismiss the Counterclaims of Defendant Anne Ray, **GRANTS** the Individual Third-Party Defendants' Motion to Dismiss Third-Party Complaint, **GRANTS** Third-Party Defendant Tuggle Duggins' Motion to Dismiss Third-Party Complaint, and **DENIES** Third-Party Defendant Tuggle Duggins' Motion for Attorney's Fees.

> *Tuggle Duggins P.A. by Denis E. Jacobson, Jeffrey S. Southerland, and Alan B. Felts for Plaintiff Kingsdown, Incorporated and Third-Party Defendants Frank Hood, Thomas I. McLean, Grendel Stephenson, William S. Pearson, and Wayne E. Tumlin.*

> *Smith Moore Leatherwood LLP by Robert R. Marcus, Heather C. White, Whit D. Pierce, and Richard A. Coughlin for Defendants W. Eric Hinshaw and Rebecca Hinshaw.*

> *William C. Ray for Defendant Anne Ray.*

---

[2] Ms. Ray has also filed two additional motions: (1) Motion to Deny Third Party Defendants Motion to Dismiss Third-Party Complaint of Anne M. Ray and (2) Motion to Deny Kingsdown's Motion to Dismiss Counterclaim and Third-Party Defendant, Tuggle Duggins Motion to Dismiss Third-Party Complaint and Attorney Fees (the "Motions to Deny"). During the March 11, 2015 hearing in this matter, counsel for Ray agreed that the Motions to Deny are simply responses in opposition to Third-Party Defendants' and Kingsdown's Motions to Dismiss Defendant Anne Ray's claims. Hence, the Court will consider these Motions as briefs in opposition to Kingsdown's and Third-Party Defendants' Motions to Dismiss and not as separate Motions.

Also, currently pending before the Court are Defendants Eric and Rebecca Hinshaw's (the "Hinshaw Defendants" or "the Hinshaws") Motion to Disqualify Kingsdown's Counsel (the "Motion to Disqualify") and Kingsdown's Motion to Strike the December 10, 2014 Affidavit of W. Eric Hinshaw, which together will be the subject of a separate adjudication, and Kingsdown's Motion to Dismiss the Hinshaw Defendants' Counterclaims, which the Court indicated at the March 11, 2015 hearing it would consider and determine after resolution of the Motion to Disqualify.

*Sharpless & Stovola, P.A. by Frederick K. Sharpless for Third-Party Defendant Tuggle Duggins P.A.*

Bledsoe, Judge.

I.

PROCEDURAL HISTORY AND BACKGROUND

{3}    Kingsdown commenced this action against Eric Hinshaw ("Mr. Hinshaw"), his wife, Rebecca Hinshaw ("Ms. Hinshaw"), and Ms. Ray on August 29, 2014 and subsequently filed an Amended Complaint on September 2, 2014, generally alleging that while serving as Kingsdown's Chief Executive Officer ("CEO") and Chairman of the Board of Directors (the "Board"), Mr. Hinshaw breached his "duty to act in good faith and in the best interests of Kingsdown" by "repeatedly engag[ing] in self-dealing . . . and . . . abus[ing] his position as a fiduciary," which "resulted in substantial benefits for himself, [Ms.] Hinshaw, and Ms. Ray at the expense of Kingsdown." (Am. Compl. ¶¶ 6–7.)

{4}    Specific to the Motions at issue, Kingsdown alleges that (i) Mr. Hinshaw and Ms. Ray authorized non-business expenses for each other and Ms. Hinshaw for reimbursement by Kingsdown (Am. Compl. ¶ 10); (ii) Mr. Hinshaw caused Kingsdown to enter into an employment agreement with Ms. Ray "that purported to bind Kingsdown to employ Ms. Ray and pay her an exorbitant salary until she retired from Kingsdown" without the knowledge, approval, or authority of Kingsdown's Board (the "Employment Agreement") (Am. Compl. ¶ 11); and (iii) on account of her actions, Ms. Ray is liable to Kingsdown for breach of fiduciary duty, constructive fraud, and civil conspiracy, and Kingsdown is entitled to a declaratory judgment declaring that the Employment Agreement is invalid and unenforceable against Kingsdown (Am. Compl. ¶¶ 31–46, 57–62).

{5}    On October 7, 2014, Ms. Ray filed her Rule 12 Motions, seeking dismissal of Kingsdown's claims under Rule 12(b)(3) for improper venue or division and Rule

12(b)(6) for failure to state a claim, and an order under Rule 12(e) requiring Kingsdown to file a more definite statement of its claims against Ms. Ray.

{6} On October 17, 2014, Ms. Ray filed an (i) Answer to Kingsdown's Amended Complaint, (ii) Counterclaims against Kingsdown, and (iii) Third-Party Complaint against Third-Party Defendants Hood (individually and as an officer and director of Kingsdown), McLean (individually and as former Board Chair of Kingsdown), Stephenson (individually and as a director of Kingsdown), Pearson (individually and as a director of Kingsdown), Tumlin (individually and as an officer of Kingsdown), Tuggle Duggins and John Doe (individually and as a co-conspirator).

{7} On November 4, 2014, Ms. Ray filed an amended Answer and Counterclaim in response to Kingsdown's Amended Complaint. In her Counterclaim, Ms. Ray denies all liability and generally contends that she has been a good, faithful, and loyal employee of Kingsdown; that the Employment Agreement was fairly and properly entered; that Kingsdown engaged in improper conduct to disparage her reputation and attempt to force her resignation from the Company; and that Kingsdown ultimately terminated her without provocation or cause. She asserts Counterclaims against Kingsdown for alleged breach of contract (arising out of the Employment Agreement), unlawful termination, blacklisting in employment, civil conspiracy, intentional infliction of emotional distress, constructive fraud, unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1, defamation, negligence, indemnification, and for declaratory judgment.

{8} On November 17, 2014, the Individual Third-Party Defendants filed their Motion to Dismiss Ray's Third-Party Complaint. On December 1, 2014, Kingsdown filed its Motion to Dismiss the Counterclaims of Defendant Anne Ray. On December 10, 2014, Tuggle Duggins filed its Motion to Dismiss Third-Party Complaint and Motion for Attorney's Fees.

{9} The Motions before the Court have been fully briefed, and the Court held a hearing on the Motions on March 11, 2015, at which all parties were represented by counsel. The time for additional submissions and arguments has now expired and the Motions are ripe for resolution.

II.

ANALYSIS

A.  Ray's Rule 12(b)(3) Motion to Dismiss Kingsdown's Amended Complaint

{10} The parties advised the Court in the Joint Case Management Report and reaffirmed at the March 11 hearing that Ray's Rule 12(b)(3) Motion for improper venue or division has been resolved and is now moot. Accordingly, the Court concludes that Ray's Rule 12(b)(3) Motion should be denied as moot.

B.  Ray's Rule 12(b)(6) Motion to Dismiss Kingsdown's Amended Complaint

{11} The question for the Court on a Rule 12(b)(6) motion to dismiss is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987) (citation omitted). "The complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Block v. County of Person*, 141 N.C. App. 273, 277–78, 540 S.E.2d 415, 419 (2000) (citing *Dixon v. Stuart*, 85 N.C. App. 338, 354 S.E.2d 757 (1987)).

{12} When the complaint fails to allege the substantive elements of some legally cognizable claim, or where it alleges facts that defeat the claim, the complaint should be dismissed under Rule 12(b)(6). *Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 345–46, 511 S.E.2d 309, 312 (1999) (citations omitted). In sum, Rule 12(b)(6) dismissal is proper "when one or more of the following three conditions is satisfied: (1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; (3) when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985) (citations omitted).

{13} Here, Ms. Ray's arguments for dismissal are essentially based on her contentions that Kingsdown's allegations about her and her conduct are false, not

that they fail to state a claim as a matter of law. Her Motion contains numerous factual assertions that contradict or add to the allegations of the Amended Complaint, fails to discuss a single case or proposition of law, and contains numerous violations of the Business Court Rules.[3]

{14} Although Ms. Ray's procedural violations may justify summary denial under the Rules of this Court,[4] the Court has nonetheless reviewed the Motion carefully on the merits.[5] Based on that review, the Court concludes that Kingsdown's Amended Complaint, when viewed under the applicable standard, contains allegations sufficient to state a claim upon which relief may be granted as to each of Kingsdown's claims for relief against Ms. Ray, and further, that the Amended Complaint does not contain allegations of fact that necessarily defeat Kingsdown's claims. Accordingly, the Court concludes that Ms. Ray's Rule 12(b)(6) Motion to Dismiss should be denied.

C.  Ms. Ray's Rule 12(e) Motion for More Definite Statement against  Kingsdown

{15} In determining a motion for more definite statement under N.C.R.C.P. Rule 12(e), the Court considers whether "a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." N.C. Gen. Stat. § 1A-1, Rule 12(e) (2014). Motions for more definite statement are not favored by the courts and are "sparingly granted because pleadings may be brief and lacking in factual detail, and because of the

---

[3] For example, Ms. Ray's motion was not accompanied by a brief (violation of BCR 15.2), failed to include a word certification (violation of BCR 15.8), and failed to provide supporting materials for her many unsubstantiated statements of fact (violation of BCR 15.5).

[4] *See* BCR 15.11 ("A motion unaccompanied by a required brief may, in the discretion of the Court, be summarily denied.").

[5] Ms. Ray's counsel, who is Ms. Ray's husband, indicated at the hearing that he has been retired from the active practice of law since 2005 and has never previously appeared in a case in the Business Court. In light of counsel's representations and Ms. Ray's subsequent compliance with the Business Court Rules in connection with the other pending Motions, the Court elects to consider Ms. Ray's Rule 12(b)(6) Motion on the merits and not enter a summary denial. Nevertheless, the Court reiterates Judge Jolly's admonition that a "party practicing before the North Carolina Business Court should take the deadlines imposed by its orders and the rules of practice very seriously." *Estate of Capps v. Blondeau*, 2014 NCBC 24 ¶ 36 (N.C. Super. Ct. June 17, 2014), http://www.ncbusinesscourt.net/opinions/2014_NCBC_24.pdf.

extensive discovery devices available to the movant." *Ross v. Ross*, 33 N.C. App. 447, 454, 235 S.E.2d 405, 410 (1977) (citation omitted). As long as the pleading meets the standards of N.C.R.C.P. Rule 8 ("Rule 8") and the opposing party is adequately notified of the nature of the claim, a motion for more definite statement will be denied. *Id.* (citations omitted). *See generally*, *e.g.*, *Gatlin v. Bray*, 81 N.C. App. 639, 644, 344 S.E.2d 814, 817 (1986) (citation omitted) ("Pleadings comply with our present concept of notice pleading if the allegations in the complaint give [the opposing party] sufficient notice of the nature and basis of [the] claim to file an answer, and the face of the complaint shows no insurmountable bar to recovery.").

{16} Ms. Ray's arguments under Rule 12(e) are similar in form and content to those advanced in support of dismissal under Rule 12(b)(6). She again asserts a number of unverified or unauthenticated facts, challenges the factual accuracy of Kingsdown's Amended Complaint, and essentially seeks to require Kingsdown to provide interrogatory responses in connection with twelve separate categories of information under the guise of a request for "more definite statement."

{17} The Court has reviewed Kingsdown's Amended Complaint in light of Rule 8's notice pleading requirements and finds that the allegations of the Amended Complaint fairly notify Ms. Ray of the nature and basis of Kingsdown's claims against her such that she can file an answer. Accordingly, because Kingsdown's allegations are not so "vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading," N.C.R.C.P. Rule 8, the Court concludes that Ms. Ray's Rule 12(e) Motion for More Definite Statement should be denied.

D. <u>Kingsdown's Motion to Dismiss the Counterclaims of Defendant Anne Ray</u>

{18} Kingsdown likewise moves under Rule 12(b)(6) to dismiss Ms. Ray's Counterclaims. Kingsdown seeks a dismissal without prejudice of all of Ms. Ray's Counterclaims because of Ms. Ray's failure to comply with N.C.R.C.P. Rules 8 and 10, and a dismissal with prejudice of all of Ms. Ray's claims, except for her breach of contract and declaratory judgment Counterclaims, for failure to state a claim as a matter of law. In sum, Kingsdown contends that Ms. Ray has pled nothing more than a breach of contract claim; therefore, Kingsdown argues Ms. Ray's contract-based

Counterclaims are the only claims that should go forward in this action. The Court will address each argument in turn.

    i.    <u>Violations of N.C.R.C.P. Rules 8 and 10</u>

{19} Kingsdown contends that Ms. Ray's Counterclaims – which feature a lengthy, 10-page factual background narrative without numbered paragraphs – violate both the requirements under Rule 8 that a pleading contain a "short and plain" statement of claims with averments that are "simple, concise, and direct" and under N.C.R.C.P. Rule 10(b) ("Rule 10") that "[a]ll averments of claim or defense shall be made in numbered paragraphs, the contents of each of which be limited as far as practicable to a statement of a single set of circumstances."

{20} The Court initially notes that most challenges to the sufficiency of a complaint under Rule 8 are based on the lack of specific detail in the complaint, not because the complaint is too detailed and voluminous. While the Court has not located a North Carolina decision upholding a Rule 8 dismissal because the complaint was too voluminous, the Court nevertheless recognizes that federal courts have held, in certain circumstances, that dismissal of voluminous complaints may be proper under Rule 8.[6] Based on the Court's review of Ms. Ray's Counterclaims here, however, the Court cannot conclude that Ms. Ray's allegations are so voluminous or incomprehensible to prevent Kingsdown from discerning the nature and basis for Ms. Ray's Counterclaims or otherwise formulating an answer to the Counterclaims. Accordingly, the Court does not find that Ms. Ray's Counterclaims violate the requirements of Rule 8.

---

[6] *See, e.g., Bell v. Lasaceli*, 2009 U.S. Dist. LEXIS 32416 at *6 (W.D.N.Y., Apr. 15, 2009) ("It is well within a district court's discretion to deny leave to amend a prolix complaint if it is so voluminous and incomprehensible that no claims can be gleaned from it."); *Jones v. Nat'l Commc'ns. & Surveillance Networks*, 266 F. App'x. 31, 33 (2d Cir. 2008) (summary order) (stating that dismissing, pursuant to Rule 8, a plaintiff's 58 page, single-spaced complaint with 87 pages of attachments, alleging over twenty separate causes of action against more than 44 defendants was not an abuse of discretion); *Blakely v. Wells*, 209 F. App'x 18, 20 (2d Cir. 2006) (summary order) (stating that "[t]he District Court acted within the bounds of permissible discretion in dismissing the second amended complaint for noncompliance with Rule 8(a)" because "[t]he pleading, which spanned 57 pages and contained 597 numbered paragraphs, was far from short or plain").

{21} Ms. Ray's violation of the straightforward requirements of Rule 10(b), however, is indisputable, and the Court concludes that requiring Ms. Ray to re-plead her Counterclaims in numbered paragraphs will allow for a less confusing and more comprehensible presentation of the issues in this action. Accordingly, the Court concludes that Ms. Ray's Counterclaims should be dismissed without prejudice and with leave for Ms. Ray to re-plead the Counterclaims that are not dismissed with prejudice in this Order in compliance with Rule 10(b). In addition, although the Court declines to dismiss the Counterclaims under Rule 8, the Court admonishes Ms. Ray to follow the requirement under Rule 8 to advance "simple, concise, and direct" allegations in the preparation and filing of her amended Counterclaims.

{22} The Court will now address the legal sufficiency of each of Ms. Ray's Counterclaims in turn.

ii. <u>Wrongful Termination</u>

{23} Ms. Ray contends that she was terminated "without cause or lawful justification" for a variety of disparate reasons, including as "an attempt to quiet her from disclosing her knowledge of the unlawful activities of the Company," (Ray's Countercl. ¶ 14), because she was "friends with [Mr. Hinshaw]," (Ray's Countercl. ¶ 15), "in order to avoid payment pursuant to her employment contract," (Ray's Countercl. ¶ 15), to avoid paying for her stress-related injury under the workers compensation laws, (Ray's Countercl. ¶ 15), and because of "the substantial monies owed to her under the Federal Fair Labor Standards Act," (Ray's Countercl. ¶ 15). Ms. Ray also makes reference to a number of state and federal laws without making clear their relevance to her wrongful termination claim, including the North Carolina wage and hour laws, the North Carolina Retaliatory Employment Discrimination Act, the Consumer Financial Protection Act, Title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act, the Sarbanes-Oxley Act, and the Lilly Ledbetter Fair Pay Act of 2009. (Ray's Countercl. ¶ 15).

{24} Our Court of Appeals has observed:

> In North Carolina, employment is generally terminable by either the employer or employee for any reason where no contract exists specifying a definite period of employment. This is a bright-line rule with very

limited exceptions. An at-will employee may not be terminated: (1) for refusing to violate the law at the employers [sic] request, (2) for engaging in a legally protected activity, or (3) based on some activity by the employer contrary to law or public policy.

*McDonnell v. Tradewind Airlines, Inc.*, 194 N.C. App. 674, 677, 670 S.E.2d 302, 305 (internal citations and quotation marks omitted), *disc. review denied*, 363 N.C. 128, 675 S.E.2d 657 (2009).

{25}  Generally, notice pleading is sufficient to state a claim, but our case law requires that wrongful discharge claims be pled with specificity. *Gillis v. Montgomery Cnty. Sheriff's Dep't*, 191 N.C. App. 377, 379, 663 S.E.2d 447, 449 (2008). To meet this specificity requirement, a plaintiff must allege "specific conduct by a defendant that violated a specific expression of North Carolina public policy." *Considine v. Compass Grp. USA, Inc.*, 145 N.C. App. 314, 321–22, 551 S.E.2d 179, 184, *aff'd per curiam*, 354 N.C. 568, 557 S.E.2d 528 (2001).

{26}  Upon review of Ms. Ray's Counterclaims, the Court concludes that Ms. Ray has failed to plead her wrongful discharge claim with sufficient specificity to survive Kingsdown's motion to dismiss. Although she vaguely claims that she was terminated to prevent her "from disclosing her knowledge of the unlawful activities of the Company," (Ray's Countercl. ¶ 14), her scattershot allegations suggest a variety of reasons for her discharge, some legally permissible and others potentially not, but which, taken together, do not permit the Court to conclude that Ms. Ray has identified an improper action by Kingsdown that was the "motivating" or "but for" cause of the adverse employment action she alleges she has suffered. *See, e.g., Feltman v. City of Wilson*, 767 S.E.2d 615, 621 (N.C. App. 2014) (plaintiff required to show that alleged conduct was the "motivating" or "but for" cause of termination); *Sides v. Duke Univ.*, 74 N.C. App. 331, 346, 328 S.E.2d 818, 829, *disc. review denied*, 314 N.C. 331, 335 S.E.2d 13 (1985), *overruled on other grounds by Kurtzman v. Applied Analytical Indus., Inc.*, 347 N.C. 329, 493 S.E.2d 420 (1997) (plaintiff required to show termination resulted from alleged conduct and not "for any other reason").

{27} Accordingly, the Court concludes that Kingsdown's Motion to Dismiss Ms. Ray's Counterclaim for wrongful discharge should be granted and the Counterclaim dismissed. Although it is not clear to the Court that Ms. Ray can allege facts that will meet the pleading requirements for a wrongful discharge claim under North Carolina law, the Court further concludes that Ms. Ray has pled enough specific facts in her Counterclaim to persuade the Court to dismiss her wrongful discharge claim without prejudice and allow her an opportunity to re-plead the claim in an amended pleading consistent with N.C.R.C.P. Rules 8 and 10.

    iii.       <u>Blacklisting in Employment</u>

{28} Ms. Ray contends that Kingsdown has prevented or attempted to prevent her from "seeking or otherwise obtaining employment," (Ray's Cclaims ¶ 23), in violation of the North Carolina blacklisting statute, N.C. Gen. Stat. § 14-355. In particular, she claims that Kingsdown violated the statute by advising her upon her termination that the Company intended to enforce the non-competition agreement she signed with Kingsdown on June 28, 2002, which precluded her from working for certain employers for a two-year period following her termination.

{29} The blacklisting statute provides as follows:

> If any person, agent, company or corporation, after having discharged any employee from his or its service, shall prevent or attempt to prevent, by word or writing of any kind, such discharged employee from obtaining employment with any other person, company or corporation, such person, agent or corporation shall be guilty of a Class 3 misdemeanor and shall be punished by a fine not exceeding five hundred dollars ($500.00); and such person, agent, company or corporation shall be liable in penal damages to such discharged person, to be recovered by civil action. This section shall not be construed as prohibiting any person or agent of any company or corporation from furnishing in writing, upon request, any other person, company or corporation to whom such discharged person or employee has applied for employment, a truthful statement of the reason for such discharge.

N.C. Gen. Stat. § 14-355 (2014).

{30} In order to state a claim under this statute, Ms. Ray must plead (1) that she attempted to obtain employment with another entity; (2) that Kingsdown took

affirmative steps "by word or writing of any kind" to prevent her from obtaining employment with that entity; and (3) that whatever statements or writing that were made to the entity were false. Further, "[f]or the statute to be violated, the statements to the prospective employer would have had to have been unsolicited." *Friel v. Angell Care Inc.*, 113 N.C. App. 505, 511, 440 S.E.2d 111, 115, (1994) (citation omitted); *see, e.g., Holroyd v. Montgomery Cnty.*, 167 N.C. App. 539, 545, 606 S.E.2d 353, 358, (2004) ("The purpose of the blacklisting statute is not to prohibit employers from communicating truthful information as to the nature and character of former employees.") (citation omitted).[7]

{31} Ms. Ray has failed to plead each of the necessary elements of her claim. She does not allege that she has sought employment from another entity, she has not alleged that Kingsdown has taken any action to prevent her from obtaining employment other than to indicate to her the Company's intent to enforce her 2002 non-competition agreement, and she has not alleged that Kingsdown has made any communication of any kind, false or otherwise, to a prospective employer. As such, the Court concludes that Ms. Ray's claim is fatally deficient as a matter of law and should be dismissed with prejudice.

iv.      Intentional Infliction of Emotional Distress

{32} Under North Carolina law, the essential elements of a claim for intentional infliction of emotional distress are "(1) extreme and outrageous conduct by the [opposing party] (2) which is intended to and does in fact cause (3) severe emotional distress." *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (*citing Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981)).

{33} "Whether or not conduct constitutes extreme and outrageous behavior is initially a question of law for the court." *Simmons v. Chemol Corp.*, 137 N.C. App. 319, 325, 528 S.E.2d 368, 371 (2000) (citation omitted). "To establish the essential element of extreme and outrageous conduct, the conduct must go beyond all possible bounds of decency and 'be regarded as atrocious, and utterly intolerable in a civilized

---

[7] The statute authorizes a cause of action for punitive damages only. *Houpe v. City of Statesville*, 128 N.C. App. 334, 351, 497 S.E.2d 82, 93 (1998) (citation omitted).

community.'" *Id.* (quoting *Wagoner v. Elkin City Sch.' Bd. of Educ.*, 113 N.C. App. 579, 586, 440 S.E.2d 119, 123 (1994)).  Indeed, "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" will not be found to constitute extreme and outrageous conduct.  *Johnson v. Bollinger*, 86 N.C. App. 1, 6, 356 S.E.2d 378, 382 (1987) (quoting *Briggs v. Rosenthal*, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311 (1985)).

{34}  Significantly for this case, our appellate courts have consistently held that "the mere firing of an employee can never be 'extreme and outrageous' conduct sufficient to state a claim for intentional infliction of emotional distress." *Sims-Campbell v. Welch,* 2015 N.C. App. LEXIS 166, *11–12 (N.C. Ct. App. Mar. 3, 2015); *see also, e.g., Johnson v. Colonial Life & Accident Ins. Co.*, 173 N.C. App. 365, 373, 618 S.E.2d 867, 872–73 (2005) (holding threats to plaintiff concerning losing his job and health insurance and accusations that he submitted a false claim insufficient as matter of law); *Lorbacher v. Hous. Auth. of City of Raleigh*, 127 N.C. App. 663, 675–77, 493 S.E.2d 74, 81–82 (1997) (holding plaintiff's discharge to deflect responsibility for deaths at apartment complex and because plaintiff disclosed defendant's negligent operations insufficient as matter of law).  Indeed, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to support a claim of intentional infliction of emotional distress."  *Thomas v. Northern Telecom, Inc.,* 157 F. Supp. 2d 627, 635 (M.D.N.C. 2000) (applying North Carolina law) (citation omitted); *Moody-Williams v. Liposcience*, 953 F. Supp. 2d 677, 690 (E.D.N.C. 2012) ("In the context of one's employment particularly, North Carolina courts have been reluctant to find actionable intentional infliction of emotional distress claims.") (citations omitted).

{35}  Ms. Ray's allegations fall short of those necessary to state a cognizable claim for intentional infliction of emotional distress.  When viewed in the light most favorable to Ms. Ray, her allegations consist of what she claims was her unfair and wrongful termination by Kingsdown, her belief that she was slighted or ignored by Kingsdown's management from time to time, and her frustration and irritation with having to suffer various personal inconveniences resulting from the performance of

her job and her subsequent termination by Kingsdown. (Ray's Countercl. pp. 18–25.)[8] Such conduct can hardly be said to "go beyond all possible bounds of decency" or be seen as "utterly intolerable in a civilized community." *Simmons*, 137 N.C. App. at 325, 528 S.E.2d at 371.

{36}    At most, Ms. Ray's allegations comprise the sort of "insults," "indignities," "annoyances," and "petty oppressions" that our courts have long held are insufficient to state a claim for intentional infliction of emotional distress. *Johnson*, 86 N.C. App. at 6, 356 S.E.2d at 378. *See, e.g., Ausley v. Bishop*, 133 N.C. App. 210, 221, 515 S.E.2d 72, 80 (1999) (extreme and outrageous conduct not found where employer refused to certify the employee's reports until he signed a non-competition agreement, "contacted the police and caused embezzlement charges to be filed" against the employee, and "relayed negative and accusatory comments to [the employee's] creditors and potential clients"); *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 493, 340 S.E.2d 116, 122–23 (1986) (extreme and outrageous behavior not found where the defendant yelled and threw menus at plaintiff and interfered with her supervision of employees). As a result, the Court concludes that Ms. Ray's claim for intentional infliction of emotional distress should be dismissed with prejudice.

v.    Constructive Fraud

{37}    A claim for constructive fraud lies where (1) a relationship of trust and confidence exists, (2) the defendant takes advantage of that position of trust to benefit himself, and (3) the plaintiff was consequently injured. *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 294, 603 S.E.2d 147, 156 (2004) (citation omitted). "[A]n essential element of constructive fraud is that defendants sought to benefit themselves in the transaction." *Sterner v. Penn*, 159 N.C. App. 626, 631, 583 S.E.2d

---

[8] For example, Ms. Ray complains of having to relinquish her title as Corporate Secretary, of being excluded from office meetings, and not receiving overtime pay (Countercl. pp. 19–21), of Mr. Hood excluding her from conversations held behind closed doors, not advising her of his whereabouts and speaking to her abruptly (Countercl. pp. 19–21), of having to perform menial tasks like copying papers, picking up salesmen and customer lunches, and cleaning the kitchen (Countercl. p. 20), and of having her integrity questioned behind her back and suffering various indignities in connection with the retrieval of her personal property and information after the termination of her employment (Countercl. pp. 21–24).

670, 674 (2003) (quoting *State ex rel. Long v. Petree Stockton, L.L.P.*, 129 N.C. App. 432, 445, 499 S.E.2d 790, 798 (1998)). The existence of a fiduciary relationship is an element of a constructive fraud claim. *See White*, 166 N.C. App. at 294–95, 603 S.E.2d at 156; *see also Keener Lumber Co. v. Perry*, 149 N.C. App. 19, 28, 560 S.E.2d 817, 823 (2002) (existence of "fiduciary" relationship is essential element of a constructive fraud claim) (citation omitted).

{38} "Although our courts have broadly defined fiduciary relationships, no such relationship arises absent the existence of dominion and control by one party over another." *Kaplan v. O.K. Techs., LLC*, 196 N.C. App. 469, 474, 675 S.E.2d 133, 137 (2009). "Only when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the 'special circumstance' of a fiduciary relationship has arisen." *Crumley & Assocs., P.C. v. Charles Peed & Assocs., P.A.*, 219 N.C. App. 615, 621, 730 S.E.2d 763, 767 (2012) (quoting *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 348 (4th Cir. 1998)).

{39} Significantly for this case, the relationship of an employer and an employee typically does not give rise to fiduciary duties. *See Dalton v. Camp*, 353 N.C. 647, 651–52, 548 S.E.2d 704, 708 (2001) ("Under the general rule, 'the relation of employer and employee is not one of those regarded as confidential.'") (quoting *King v. Atl. Coast Line R.R. Co.*, 157 N.C. 44, 72 S.E. 801 (1911)); *Austin Maint. & Constr., Inc. v. Crowder Constr. Co.*, 742 S.E.2d 535, 542 (N.C. Ct. App. 2012) ("[I]n the absence of some unusual set of facts that would suffice to differentiate the relationship between [the employer] and [the employee] from other employer-employee relationships, [the employee] did not have a fiduciary relationship with [the employer]."); *Reichhold Chems., Inc. v. Goel*, 146 N.C. App. 137, 155, 555 S.E.2d 281, 292 (2001) ("[A] fiduciary relationship will generally not be found in the workplace.").

{40} Nevertheless, Ms. Ray contends that Kingsdown owed her a fiduciary duty on the facts she has alleged. In particular, Ms. Ray contends that her entry into the Employment Agreement with Kingsdown "won the absolute trust and confidence of Ms. Ray and situated [Kingsdown] with a position of more dominant influence over

her than was previously provided during her employment career." (Ray's Countercl. ¶ 43.) Ms. Ray then asserts that Kingsdown took advantage of this fiduciary relationship to "benefit itself without due regard for the interests and well-being of Ms. Ray." (Ray's Countercl. ¶ 44.)

{41} The Court does not find Ms. Ray's contentions persuasive. Indeed, that Kingsdown offered Ms. Ray an employment contract simply emphasizes the employment nature of the relationship and does nothing to create the special circumstances necessary to find a fiduciary duty. Moreover, North Carolina law is clear that "parties to a contract do not thereby become each others' fiduciaries; they generally owe no special duty to one another beyond the terms of the contract . . . ." *Branch Banking and Trust Co. v. Thompson*, 107 N.C. App. 53, 61, 418 S.E.2d 694, 699 (1992) (citations omitted). Having failed to show that a fiduciary relationship existed with Kingsdown, the Court concludes that Ms. Ray's claim for constructive fraud fails as a matter of law and should be dismissed with prejudice.

{42} Kingsdown also contends that Ms. Ray's constructive fraud claim should be dismissed because she has not pled that Kingsdown obtained an improper benefit from the alleged constructive fraud. See *Sterner*, 159 N.C. App. at 631, 583 S.E.2d at 674. Ms. Ray contends in response that Kingsdown received certain non-monetary benefits – the removal of Ms. Ray as an obstacle to Kingsdown's allegedly ongoing illegal conduct – and certain monetary benefits – a proportional reduction in the bonus pool – from her improper termination. The Court concludes that Ms. Ray's alleged benefits to Kingsdown from the alleged constructive fraud are too speculative and conjectural to sustain her claim. For this additional reason, therefore, the Court finds that Ms. Ray's constructive fraud claim should be dismissed with prejudice.[9]

---

[9] Ms. Ray also contends, without citing to any case law, that because she owed Kingsdown a fiduciary duty when she served as an officer of the Company, Kingsdown necessarily owed her a fiduciary duty as well. (*See* Ray Opp. Br., p. 13) ("A fiduciary duty is not a one-way street."). Ms. Ray's contention is simply not the law. A fiduciary duty is owed by the party in whom special trust and confidence is placed, not by the party who has placed that trust and confidence. *See generally, e.g., Lynn v. Fannie Mae,* 760 S.E.2d 372, 375 (N.C. Ct. App. 2014) ("Fiduciary relationships are established when a special confidence is placed in a party which is bound to act in good faith and in the best interest of the party who reposes that confidence.").

vi.  Unfair and Deceptive Trade Practices – N.C. Gen. Stat. § 75-1.1

{43}  Ms. Ray asserts a claim for unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 arising out of Kingsdown's alleged conduct toward her during her employment and in connection with her termination.  North Carolina's statute, however, targets "unfair or deceptive acts or practices in or affecting commerce[.]" N.C. Gen. Stat. § 75-1.1(a) (2014).  Whether an act is "in or affecting commerce" is a question of law for the Court to decide. *Hardy v. Toler*, 288 N.C. 303, 310, 218 S.E.2d 342, 346–47 (1975).

{44}  Although N.C. Gen. Stat. § 75-1.1 broadly defines "commerce" to include "all business activities, however denominated," our Courts have long held that the statute "is not intended to apply to all wrongs in a business setting."  *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 593, 403 S.E.2d 483, 492 (1991).  To establish the "commerce" requirement, the defendant's conduct "must affect commerce in a commercial setting, . . . not in a private relationship type setting such as corporate governance issues, . . . securities transactions, . . . or *disputes arising from employment*[.]"  *McKee v. James*, 2014 NCBC 73 ¶ 79 (N.C. Super. Ct. Dec. 31, 2014), http://www.ncbusinesscourt.net/opinions/2014_NCBC_73.pdf  (emphasis  added) (quoting *In re Brokers, Inc.*, 396 B.R. 146, 161 (Bankr. M.D.N.C. 2008)).  In short, the statute is intended to apply to "(1) interactions between businesses, and (2) interactions between businesses and consumers."  *White v. Thompson*, 364 N.C. 47, 52, 691 S.E.2d 676, 679 (2010).

{45}  The conduct about which Ms. Ray complains – which is the same sort of conduct she alleges in support of her claim for intentional infliction of emotional distress – arises out of her employment and plainly involves internal business disputes rather than interactions with businesses or consumers.  As such, Kingsdown's alleged conduct does not affect commerce in a commercial setting and cannot give rise to a cognizable claim under N.C. Gen. Stat. § 75-1.1. *See, e.g., Buie v. Daniel Int'l Corp.*, 56 N.C. App. 445, 448, 289 S.E.2d 118, 119–120 (1982) (holding that "employer-employee relationships do not fall within the intended scope of G.S. 75-1.1"); *Kinesis Adver., Inc. v. Hill*, 187 N.C. App. 1, 21, 652 S.E.2d 284, 298

(2007) ("We have consistently held that the employer/employee relationship does not fall within the intended scope and purpose of [N.C. Gen. Stat. § 75-1.1]."); *Wilson v. Blue Ridge Elec. Mbrshp. Corp.*, 157 N.C. App. 355, 358, 578 S.E.2d 692, 694 (2003) ("Matters of internal corporate management . . . do not affect commerce."). As a result, the Court concludes that Ms. Ray's claim for unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 should be dismissed with prejudice.

vii.        <u>Defamation</u>

{46}    Ms. Ray's Counterclaim for defamation is based on three sets of purported defamatory statements:  (1) statements contained in Kingsdown's written statement to the Equal Employment Opportunity Commission ("EEOC") in response to Ms. Ray's  charge of age discrimination (Ray's Countercl. ¶¶ 54–58); (2) unspecified statements made by Kingsdown, by and through certain of its officers and directors, that were allegedly published in local newspapers and in *Furniture Today*, a trade publication (Ray's Countercl. ¶ 61); and (3) unspecified statements contained in Kingsdown's Amended Complaint in this action (Ray's Countercl. ¶ 62).

{47}    First, Kingsdown is entitled to an absolute privilege with respect to Kingsdown's written statements to the EEOC and the statements contained in the Amended Complaint in this action.  An EEOC investigation, such as the one initiated by Ms. Ray here, has regularly been recognized as a quasi-judicial proceeding in which an absolute privilege applies.  *See, e.g., Collins-Pearcy v. Mediterranean Shipping Co. (USA),* 698 F. Supp. 2d 730, 765 (S.D. Tex. 2010) ("Statements made to the EEOC in the course of an investigation are absolutely privileged."); *Bernstein v. Seeman*, 593 F. Supp. 2d 630, 636 (S.D.N.Y. 2009) ("The two statements contained in [the employer's] submission to the EEOC and in counsel's letter to [the employee] cannot form the basis of a defamation claim because both statements were made under the protection of absolute immunity."); *Shabazz v. PYA Monarch, LLC*, 271 F. Supp. 2d 797, 803–05 (E.D. Va. 2003); *Stith v. Chadbourne & Parke, LLP*, 160 F. Supp. 2d 1, 8 (D.D.C 2001).

{48}    Similarly, the North Carolina appellate courts have long recognized that "a defamatory statement made in the due course of a judicial proceeding is absolutely

privileged and will not support a civil action for defamation, even though it be made with express malice." *Jarman v. Offutt*, 239 N.C. 468, 472, 80 S.E.2d 248, 251 (1954) (citations omitted). Accordingly, Ms. Ray's defamation claim should be dismissed with prejudice to the extent that claim is based on Kingsdown's statements to the EEOC or in its Amended Complaint. *Id.* (noting that "doctrine of absolute privilege confers "complete immunity").

{49} North Carolina law is also clear that "[i]n pleading a cause of action for defamation, a plaintiff must recount the allegedly defamatory statement either verbatim or at least with enough specificity to allow the Court to decide if the statement is defamatory." *Jolly v. Acad. Collection Serv., Inc.*, 400 F. Supp. 2d 851, 861 (M.D.N.C. 2005) (citing *Morrow v. Kings Dep't Stores*, 57 N.C. App. 13, 21, 290 S.E.2d 732, 737 (1982)). Against this heightened pleading standard, Ms. Ray, in baldly declaring that Kingsdown "defamed [her] by causing false and malicious statements to be published against [her] in various local newspapers and in . . . *Furniture Today*," (Ray's Countercl. ¶ 61) and without providing any further factual detail, has failed to sustain her claim for defamation. As a result, Ms. Ray's counterclaim for defamation on this basis should be dismissed. Because it is not clear that Ms. Ray cannot plead a defamation claim based on these alleged statements as a matter of law, however, the Court dismisses her defamation claim without prejudice to the extent it is based on allegedly defamatory statements in local newspapers and in *Furniture Today*, with leave for Ms. Ray to re-plead her claim consistent with N.C.R.C.P. Rules 8 and 10.

viii.     Negligence

{50} To state a claim for negligence, Ms. Ray must allege: (1) a legal duty; (2) failure to act in a reasonable manner in performing that duty; and (3) an injury that was proximately caused by failing to act in a reasonable manner. *Stein v. Asheville City Bd. of Educ.*, 360 N.C. 321, 328, 626 S.E.2d 263, 267 (2006). A negligence claim "necessarily fails if there is no legal duty owed to the plaintiff by the defendant." *Bridges v. Parrish*, 222 N.C. App. 320, 323, 731 S.E.2d 262, 265 (2012) (citation omitted); *see, e.g., Davis v. N.C. Dep't of Human Res.*, 121 N.C. App. 105, 112, 465

S.E.2d 2, 7 (1995) (defining duty as an "obligation, recognized by the law, requiring the person to conform to a certain standard of conduct, for the protection of others against unreasonable risks") (internal quotation marks omitted).

{51} Ms. Ray contends that Kingsdown's directors owed her a legal duty as directors of Kingsdown under N.C. Gen. Stat. § 55-8-30 and claims that "by not properly investigating the false claims made by its management, [Kingsdown's Board] breached its collective and respective duty and care owed to Ms. Ray." (Ray's Countercl. ¶ 68.) Ms. Ray, however, has failed to show that Kingsdown owed her the legal duty that she claims to exist. First, Kingsdown's directors owe a fiduciary duty to the corporation, *i.e.*, to Kingsdown – not to the officers, shareholders, or employees of Kingsdown. *Keener Lumber Co.*, 149 N.C. App. at 26, 560 S.E.2d at 822 ("Under North Carolina law, directors of a corporation generally owe a fiduciary duty *to the corporation*, and where it is alleged that directors have breached this duty, the action is properly maintained *by the corporation* rather than any individual creditor or stockholder.") (emphasis in original) (citing *Underwood v. Stafford*, 270 N.C. 700, 703, 155 S.E.2d 211, 213 (1967)). Moreover, as discussed above, Kingsdown, as Ms. Ray's employer, did not owe a fiduciary duty to her, as Kingsdown's employee, and Ms. Ray has not shown the existence of any other legal duty. *See, e.g., Reichhold Chems.,* 146 N.C. App. at 155, 555 S.E.2d at 292 ("[A] fiduciary relationship will generally not be found in the workplace."). Finally, although Kingsdown owes Ms. Ray a general common law duty to "act, or to use that which he controls, as not to injure another," *Pinnix v. Toomey*, 242 N.C. 358, 362, 87 S.E.2d 893, 898 (1955), Ms. Ray has not alleged sufficient facts to show that Kingsdown has breached that duty here.

{52} Furthermore, Ms. Ray's negligence claim is intertwined with, if not simply a restatement of, the breach of contract claim that underlies each of her claims in this action. As she states in her opposition brief, "[Kingsdown] undertook an active course of conduct (Conspiracy, Interference with Contract, etc.) which they specifically designed in an attempt to have Ms. Ray voluntarily resign her position with Kingsdown. Such wrongful conduct is alleged throughout Ms. Ray's Counterclaims

and Third-Party Complaint and gives rise for the cause of action for negligence as stated hereinabove." (Ray Opp. Br. p. 21.)

{53} Under North Carolina law, however, "[o]rdinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor." *North Carolina State Ports Auth. v. Lloyd A. Fry Roofing Co.*, 294 N.C. 73, 81, 240 S.E.2d 345, 350 (1978) (citations omitted). Where, as here, the alleged injury from a plaintiff's alleged negligence – here the termination of Ms. Ray's employment and the failure to pay the sums due under her Employment Agreement – is the same injury resulting from the alleged breach of contract, an action in negligence will not lie. *See, e.g., Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 43, 587 S.E.2d 470, 476 (2003) ("[A] tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to properly perform was due to the negligent or intentional conduct of that party, when the injury resulting from the breach is damage to the subject matter of the contract.") (internal quotation marks and citation omitted); 161 N.C. App. at 42, 587 S.E.2d at 476 ("[N]o negligence claim [exists] where all rights and remedies have been set forth in the contractual relationship").

{54} For each of these reasons, Ms. Ray's counterclaim for negligence should be dismissed with prejudice.

ix. Civil Conspiracy

{55} To state a claim for civil conspiracy, Ms. Ray must adequately plead the following elements: "(1) an agreement between two or more persons to do a wrongful act; (2) an overt act committed in furtherance of the agreement; and (3) damage to the plaintiff." *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 657, 464 S.E.2d 47, 54 (1995).

{56} Ms. Ray premises her civil conspiracy claim here on her contention that "two or more agents of [Kingsdown] conspired together to ruin the employment status of Ms. Ray with [Kingsdown] for their own monetary gains or other benefits," (Ray's Countercl. ¶ 28), and seeks to hold Kingsdown vicariously liable for this alleged conspiracy. (Ray's Countercl. ¶ 27.) Under well-established principles of North

Carolina law, however, allegations like Ms. Ray's – claiming that a corporation has conspired with its agents, officers, or employees – is "tantamount to accusing a corporation of conspiring with itself." *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC,* 184 N.C. App. 613, 625, 646 S.E.2d 790, 799 (2007) (citation omitted). As such, our courts have held that the intracorporate immunity doctrine applies to bar Ms. Ray's claim. *Id.* ("The doctrine of intracorporate immunity holds that, since at least two persons must be present to form a conspiracy, a corporation cannot conspire with itself, just as an individual cannot conspire with himself.") (citation omitted); *see also Maurer v. SlickEdit, Inc.,* 2005 NCBC 1 ¶ 61 (N.C. Super. Ct. May 16, 2005), http://www.ncbusinesscourt.net/opinions/2005%20NCBC%201.htm ("Because [individual] defendants . . . are officers and directors of [the corporation], they are entitled to intracorporate immunity against plaintiff's conspiracy claim."); *Garlock v. Hilliard*, 2000 NCBC 11 ¶¶ 25–26 (N.C. Super. Ct. Aug. 22, 2000), http://www.ncbusinesscourt.net/opinions/2000%20NCBC%2011.htm (to similar effect).

{57}   Further, although Ms. Ray correctly notes that an exception to the doctrine of intracorporate immunity may exist if the agent of the corporation has an "independent personal stake in achieving the corporation's illegal objective," *Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985) (citing *Greenville Publishing Co., v. Daley Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974)), this Court has previously observed that "[t]his 'independent personal stake' exception must not be interpreted in too broad a manner or it will consume the entire intracorporate immunity doctrine." *Garlock*, 2000 NCBC 11 ¶ 27 (quoting *Selman v. Am. Sports Underwriters, Inc.*, 697 F. Supp. 225, 238–39 (E.D. Va. 1988) ("Certainly, under the most permissive interpretation of its language, an employee or agent of a corporation would always meet the exception since he would surely have an independent personal stake in the health and profitability of the corporation.  Such an interpretation is overbroad."). Applying these principles here, the Court finds that Ms. Ray has alleged nothing more than the "general and indirect corporate benefit always present under the circumstances surrounding virtually any alleged corporate conspiracy."   *Id.*

(quotation omitted). As such, the Court concludes that the independent personal stake exception does not apply and that Ms. Ray's claim for civil conspiracy should be dismissed with prejudice.

x.    <u>Indemnification</u>

{58} Ms. Ray contends that she is entitled to indemnification under Article VI of Kingsdown's Bylaws because Kingsdown's claims arise out of the performance of her duties as an officer of the Company. (Ray's Countercl. ¶¶ 73–79.) Kingsdown contends in response that Ms. Ray is not entitled to indemnification under the language of the Bylaws and applicable law, and, in any event, that Ms. Ray's claim is premature because Kingsdown "has not made the determination required for Ray to be indemnified under the Bylaws." (Pl.'s Br. Supp. Mot. Dismiss p. 20–21.)

{59} Counsel for the Hinshaws advised at the hearing that the Hinshaws have asserted a counterclaim for indemnification, also under Article VI of Kingsdown's Bylaws, which Kingsdown has moved to dismiss but which the Court has not yet scheduled for hearing or otherwise resolved. The parties agree that Ms. Ray's and the Hinshaws' respective claims for indemnification raise similar legal issues and that Kingsdown's motions to dismiss these Counterclaims rest on similar arguments. Accordingly, the Court determines, in its discretion, that it will promote judicial efficiency and economy for the Court to defer its ruling until such time as the Court may consider together Kingsdown's motions to dismiss both Ms. Ray's and the Hinshaws' counterclaims for indemnification. As a result, the Court dismisses Ms. Ray's indemnification claim without prejudice with leave for Ms. Ray to re-plead her indemnification claim consistent with the requirements of N.C.R.C.P. Rules 8 and 10(b).

E.   Individual Third-Party Defendants' Motion to Dismiss Ray's Third-Party Complaint

{60}   Ms. Ray has asserted against the Individual Third-Party Defendants many of the allegations, and most of the claims, she has asserted against Kingsdown. The Court will review the legal sufficiency of each claim in turn.[10]

i.   Wrongful Termination

{61}   Ms. Ray contends that the Individual Third-Party Defendants are liable to her for their alleged actions in causing her alleged wrongful termination by Kingsdown.[11] North Carolina law is clear, however, that a wrongful discharge claim may only be brought against the employer, and not, as the Individual Third-Party Defendants were here – the employer's agents. *See Sides v. Duke Univ.*, 74 N.C. App. 331, 343, 328 S.E.2d 818, 826–27 (1985) (employee's wrongful discharge claim against individual defendants properly dismissed at 12(b)(6) stage because employee alleged she had an employment agreement with the corporate defendant, not the individuals); *see also Johnson v. North Carolina*, 905 F. Supp. 2d 712, 726 (W.D.N.C. 2012) ("Pursuant to established North Carolina law, a plaintiff may only bring a wrongful discharge action against the plaintiff's employer, not against the employer's agents (such as coworkers and supervisors).") (internal quotation marks omitted); *Iglesias v. Wolford*, 667 F. Supp. 2d 573, 590 (E.D.N.C. 2009) ("Under North Carolina law, a plaintiff may only bring a wrongful-discharge action against the plaintiff's employer, not against the employer's agent.") (citation omitted); *Hooper v. North Carolina*, 379 F. Supp. 2d 804, 814 (M.D.N.C. 2005) ("The North Carolina Court of Appeals has held . . . that an action for wrongful discharge will lie only against an employer, and not against individual employees.") (citing *Sides*, 74 N.C. App. at 343, 328 S.E.2d at 826–27). Accordingly, Ms. Ray's third-party claim for wrongful discharge should be dismissed with prejudice.

---

[10] The Individual Third-Party Defendants did not specifically raise Rule 8 or Rule 10(b) as a ground for dismissal of Ms. Ray's Third-Party Complaint.

[11] Ms. Ray admits that Kingsdown was her employer. (Third-Party Complaint p. 2–3; Third-Party Complaint ¶¶ 15, 22, 278.)

## ii. Tortious Interference with Contract

{62} Our courts have set forth the elements of a claim for tortious interference with contract as follows: (1) a valid contract between the plaintiff and a third person that confers upon the plaintiff a contractual right against a third person; (2) defendant knows of the contract; (3) defendant intentionally induced the third person not to perform the contract; (4) defendant acted without justification; and (5) defendant's actions resulted in actual damage to the plaintiff. *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988). The purpose of the wrongful interference with contract tort is to afford relief "against an *outsider* who knowingly, intentionally and unjustifiably induces one party to a contract to breach it to the damage of the other party." *Childress v. Abeles*, 240 N.C. 667, 674, 84 S.E.2d 176, 181 (1954) (emphasis added) (citations omitted).

{63} Ms. Ray's claim against the Third-Party Defendants asserts that these parties, all acting in their capacities as officers and directors of Kingsdown, committed various wrongful acts to terminate her Employment Agreement with Kingsdown. North Carolina law is clear, however, that a corporation's officers and directors acting on the corporation's behalf are not "outsiders" to the corporation's contracts and thus generally cannot be held liable for tortious interference with the corporation's contracts. *See, e.g., Wagoner,* 113 N.C. App. at 587, 440 S.E.2d at 124 ("We initially note that plaintiff cannot maintain an action against the Board or Lassiter for malicious interference of contract because the Board and Lassiter, as superintendent of the Board, are parties to the contract.") (citations omitted). *See also Palles v. Hatteras Inv. Partners, LLC*, 08 CVS 14393 ¶¶ 39–41 (N.C. Super. Ct. July 27, 2009) (managing member and president of LLC cannot be liable for tortious interference with an LLC's employee's contract with LLC because the managers are not "outsiders" to the contract).

{64} Our courts have recognized a narrow exception to this general rule, holding that someone who is not an outsider to the contract may be liable for interference with that contract if he acted "maliciously." *Smith v. Ford Motor Co.*, 289 N.C. 71, 221 S.E.2d 282 (1976). "It is not enough, however, to show that a defendant acted

with actual malice; the plaintiff must forecast evidence that the defendant acted with legal malice. A person acts with legal malice if he does a wrongful act or exceeds his legal right or authority in order to prevent the continuation of the contract between the parties." *Varner v. Bryan*, 113 N.C. App. 697, 702, 440 S.E.2d 295, 298 (1994) (citations omitted).

{65} Here, however, Ms. Ray's allegations make plain that the actions of the Individual Third-Party Defendants were taken in connection with the exercise of their duties as officers and directors of the Company. As such, Ms. Ray has not pled that the Individual Third-Party Defendants acted with "legal malice," and the narrow exception discussed above does not apply to salvage Ms. Ray's claim. *See, e.g., Childress*, 240 N.C. at 667, 84 S.E.2d at 176 ("If the outsider has a sufficient lawful reason for inducing the breach of contract, he is exempt from liability for so doing, no matter how malicious in actuality his conduct may be."). Accordingly, the Court concludes that Ms. Ray's third-party claim for tortious interference with contract should be dismissed with prejudice.

### iii. Constructive Fraud

{66} Ms. Ray broadly claims that the Individual Third-Party Defendants breached a fiduciary duty to her by terminating her Employment Agreement. Although Ms. Ray alleges in conclusory fashion that she had a "special relationship of trust" with each Individual Third-Party Defendant, (e.g., Third-Party Compl. ¶ 37), and that each Individual Third-Party Defendant had "a position of dominant influence," (e.g., Third-Party Compl. ¶ 40), Ms. Ray has failed to allege facts showing a legal relationship or any special circumstances that would create a fiduciary duty running to her from any Third-Party Defendant under North Carolina law. *See, e.g., Dalton*, 353 N.C. at 651, 548 S.E.2d at 708 (holding that "the relation of employer and employee is [generally] not one of those regarded as confidential") (quotation omitted); *Highland Paving Co. v. First Bank*, 742 S.E.2d 287, 292–93 (2013) (affirming dismissal of constructive fraud claim where plaintiff's conclusory assertions alleged that it "placed special trust and confidence" in defendant but failed

to identify facts showing the existence of a fiduciary relationship). As such, Ms. Ray's third-party claim for constructive fraud should be dismissed with prejudice.

iv. <u>Intentional Infliction of Emotional Distress; Unfair and Deceptive Trade Practices – Violation of N.C. Gen. Stat. § 75-1.1; Negligence; and Civil Conspiracy</u>

{67} Ms. Ray asserts the same general conduct in support of her third-party claims for intentional infliction of emotional distress, unfair and deceptive trade practices, negligence, and civil conspiracy as she does in support of these same claims against Kingsdown. Accordingly, for the same reasons set forth in the Court's discussion of Ms. Ray's claims against Kingsdown, the Court concludes that Ms. Ray's third-party claims for intentional infliction of emotional distress, unfair and deceptive trade practices, negligence, and civil conspiracy should be dismissed with prejudice.

v. <u>Defamation</u>

{68} Ms. Ray asserts a third-party defamation claim against only Mr. Hood and alleges the same general conduct in support of this claim as she does in support of that same claim against Kingsdown. Accordingly, the Court concludes, for the same reasons set forth in the Court's discussion of Ms. Ray's defamation claim against Kingsdown, that Ms. Ray's third-party claim for defamation against Mr. Hood should be dismissed with prejudice to the extent the claim is based on statements made in connection with the EEOC investigation arising out of her age discrimination charge or in Kingsdown's Amended Complaint. The Court further concludes that Ms. Ray's third-party claim against Mr. Hood for defamation should be dismissed without prejudice to the extent it is based on allegedly defamatory statements in local newspapers and in *Furniture Today*, with leave for Ms. Ray to re-plead her claim consistent with N.C.R.C.P. Rules 8 and 10.

F. <u>Tuggle Duggins' Motion to Dismiss Ray's Third-Party Complaint</u>

{69} Ms. Ray has asserted against Tuggle Duggins many of the same allegations, and most of the same claims, she has asserted against Kingsdown and all of the allegations and claims she has asserted against the Individual Third-Party

Defendants. She bases her third-party claims against Tuggle Duggins on the alleged conduct of Third-Party Defendant Tumlin, a partner in the Firm, and asserts that Tuggle Duggins is vicariously liable for Mr. Tumlin's conduct. As a result, the Court's analysis and conclusions concerning the Individual Third-Party Defendants' Motion to Dismiss Third-Party Complaint applies with equal force to Tuggle Duggins' Motion to Dismiss Third-Party Complaint. The Court will nonetheless address the specific claims, as necessary, below.

      i.      <u>Tortious Interference with Contract</u>

{70} The Court's analysis of Ms. Ray's third-party claim for tortious interference with contract against the Individual Third-Party Defendants applies equally to Ms. Ray's third-party tortious interference claim against Tuggle Duggins. In particular, Mr. Tumlin, as Kingsdown's attorney, was not an outsider to Ms. Ray's Employment Agreement, and thus, liability for tortious interference with that contract, either directly or vicariously, cannot be extended to Mr. Tumlin or his Firm based on his conduct. *See, e.g., Rhodes, Inc. v. Morrow*, 937 F. Supp. 1202, 1216 (M.D.N.C. 1996) (an "attorney should not be considered an 'outsider' for the purposes of applying the elements of [tortious interference with contract under North Carolina law]. Instead, the attorney, as a representative of the client, is the same entity as the client within the elements of this tort"). As a result, Ms. Ray's third-party claim for tortious interference with contract against Tuggle Duggins should be dismissed with prejudice. *Id*. ("This tort, if applied to an attorney offering advice to a client on the validity of a contract or the necessity of complying with an agreement, would so restrict that attorney's ability to counsel the client as to make application of the tort, in that instance, against public policy.").

      ii.      <u>Constructive Fraud</u>

{71} The Court's analysis of Ms. Ray's third-party claim for constructive fraud against the Individual Third-Party Defendants applies equally to Ms. Ray's third-party constructive fraud claim against Tuggle Duggins.

{72} In addition, as noted previously, under North Carolina law, "an essential element of constructive fraud is that defendants sought to benefit themselves in the

transaction." *Sterner*, 159 N.C. App. at 631, 583 S.E.2d at 674. Here, Ms. Ray alleges that Kingsdown paid legal fees to Mr. Tumlin and Tuggle Duggins, and that these payments financially benefitted Mr. Tumlin and the Firm. (Third-Party Compl. ¶ 302). North Carolina courts, however, have consistently held that payment of a fee for work is not an "improper benefit" and cannot serve as the basis for a claim of constructive fraud. *See NationsBank of N.C. v. Parker*, 140 N.C. App. 106, 114, 535 S.E.2d 597, 602 (2000) (holding that "payment of a fee to a defendant for work done by that defendant does not by itself constitute sufficient evidence that the defendant sought his own advantage"); *see also Clay v. Monroe*, 189 N.C. App. 482, 488, 658 S.E.2d 532, 537 (2008) (requiring the plaintiff to allege "that the benefit sought was more than . . . *payment of a fee to a defendant for work it actually performed*") (internal quotation marks omitted) (emphasis in original). For this additional reason, therefore, Ms. Ray's third-party claim for constructive fraud against Tuggle Duggins should be dismissed with prejudice.

iii.     Unfair Trade and Deceptive Trade Practices – Violation of N.C. Gen. Stat. § 75-1.1

{73}   The Court's analysis of Ms. Ray's third-party claim for alleged violation of N.C. Gen. Stat. § 75-1.1 against the Individual Third-Party Defendants applies equally to Ms. Ray's third-party unfair and deceptive trade practices claim against Tuggle Duggins.

{74}   In addition, as noted previously, N.C. Gen. Stat. § 75-1.1 targets "unfair or deceptive acts or practices in or affecting commerce[.]" N.C. Gen. Stat. § 75-1.1(a) (2014). In defining the "in or affecting commerce" requirement, our legislature has provided that "'commerce' includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." N.C. Gen. Stat. § 75-1.1(b) (2014). "In order for the learned profession exemption to apply, a two-part test must be satisfied. First, the person or entity performing the alleged act must be a member of a learned profession. Second, the conduct in question must be a rendering of professional services." *Reid v. Ayers*, 138 N.C. App. 261, 266, 531 S.E.2d 231, 235 (2000) (citations omitted).

{75}    Here, Ms. Ray has pled that Mr. Tumlin and Tuggle Duggins are attorneys, (Third-Party Compl. ¶¶ 11–12), and thus they are members of a learned profession. *Reid*, 138 N.C. App. at 266, 531 S.E.2d at 235 ("[A] law firm and its attorneys are members of a learned profession."). Moreover, the conduct of Mr. Tumlin and Tuggle Duggins that Ms. Ray alleges in support of her unfair trade practices claim involves the sort of professional services that are "often carried out by law firms or attorneys." *Id.*; (*See, e.g.*, Third-Party Complaint ¶ 305 (alleging Mr. Tumlin, as "legal advisor," advised Board "to deny [Ms. Ray's] employment contract"), *id.* p. 7 (alleging Mr. Tumlin served as "legal advisor" to the Board).) As a result, the Court concludes that the learned profession exemption applies to bar Ms. Ray's claim based on the Firm's alleged conduct and, for this additional reason, Ms. Ray's claim under N.C. Gen. Stat. § 75-1.1 should be dismissed with prejudice.[12]

iv.    Negligence

{76}    The Court's analysis of Ms. Ray's third-party claim for alleged negligence against the Individual Third-Party Defendants applies equally to Ms. Ray's third-party negligence claim against Tuggle Duggins.

{77}    In addition, the gravamen of Ms. Ray's allegations in support of her negligence claim against Tuggle Duggins is that Ms. Ray should recover for Tuggle Duggins' alleged negligence in its representation of Kingsdown. North Carolina courts, however, allow a non-client like Ms. Ray to recover for the negligence of an attorney in only rare and limited circumstances. *See, e.g., Piraino Bros., LLC v. Atl. Fin. Group, Inc.,* 211 N.C. App. 343, 349, 712 S.E.2d 328, 333 (2011) ("The Courts of this State have held attorneys liable for actions that impact non-client third parties

---

[12] Pursuant to N.C. Gen. Stat. § 75-16.1, the "presiding judge may, in his discretion" award a reasonable attorney fee if "[t]he party instituting the [N.C. Gen. Stat. 75-1.1] action knew, or should have known, the action was frivolous and malicious." *See, e.g., McKinnon v. CV Indus.*, 745 S.E.2d 343, 350 (N.C. Ct. App. 2013) ("A claim is frivolous if a proponent can present no rational argument based upon the evidence or law in support of [it]. A claim is malicious if it is wrongful and done intentionally without just cause or excuse or as a result of ill will.") (internal citations and quotation marks omitted). Although in this case Defendant Ray's assertion of a claim under N.C. Gen. Stat. § 75-1.1 borders on the frivolous, the Court, in its discretion, does not find that Defendant Ray's claim was malicious, and thus, an award of attorneys' fees against Defendant Ray is not warranted under these specific circumstances. As a result, the Court concludes that Tuggle Duggins' Motion for Attorney's Fees should be denied.

in only a few limited situations . . . ."). None of the limited circumstances where such a recovery has been permitted are remotely similar to Ms. Ray's claim here, which arises from Mr. Tumlin and the Firm providing legal advice as outside corporate counsel to Kingsdown in connection with the termination of Ms. Ray's Employment Agreement. *Cf. Title Ins. Co. v. Smith, Debnam, Hibbert & Pahl*, 119 N.C. App. 608, 459 S.E.2d 801 (1995) (duty applies where the attorney renders a title opinion upon which the non-client is entitled to rely); *Jenkins v. Wheeler*, 69 N.C. App. 140, 316 S.E.2d 354 (1984) (duty applies where there is a complete unity of interests between the attorney's client and the non-client). For this additional reason, therefore, the Court concludes Ms. Ray's third-party claim for negligence against Tuggle Duggins should be dismissed with prejudice.

v.      <u>Wrongful Termination; Intentional Infliction of Emotional Distress</u>

{78} The Court's analysis of Ms. Ray's third-party claims for alleged wrongful termination and alleged intentional infliction of emotional distress against the Individual Third-Party Defendants applies equally to Ms. Ray's third-party claims for alleged wrongful termination and alleged intentional infliction of emotional distress against Tuggle Duggins. As such, Ms. Ray's third-party claims for alleged wrongful termination and alleged intentional infliction of emotional distress against Tuggle Duggins should be dismissed with prejudice.

vi.     <u>Violation of N.C.R.C.P. Rules 8 and 10(b)</u>

{79} Similar to Kingsdown's criticisms of Ms. Ray's Counterclaims, Tuggle Duggins contends that Ms. Ray's Third-Party Complaint should be dismissed under Rule 8 because it is voluminous and incomprehensible, and under Rule 10(b) because it does not contain separately-numbered paragraphs in its lengthy background section, as required. Because the Court has determined that each of the claims in Ms. Ray's Third-Party Complaint against Tuggle Duggins should be dismissed with prejudice, the Court declines to address the Firm's arguments for dismissal without prejudice under Rules 8 and 10(b).

III.

CONCLUSION

{80}   Based on the foregoing, the Court hereby:

    a.  **DENIES** Ray's Rule 12(b)(3) Motion as moot;

    b.  **DENIES** Ray's Rule 12(b)(6) Motion;

    c.  **DENIES** Ray's Rule 12(e) Motion for More Definite Statement;

    d.  **GRANTS** Kingsdown's Motion to Dismiss the Counterclaims of Defendant Anne Ray, dismisses with prejudice Defendant Ray's Counterclaims for blacklisting in employment under N.C. Gen. Stat. § 14-355, intentional infliction of emotional distress, constructive fraud, unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1, negligence, and civil conspiracy, and dismisses without prejudice Defendant Ray's Counterclaims for breach of contract, declaratory judgment, wrongful termination, indemnification, and defamation (to the extent the defamation claim relates to alleged statements made by Kingsdown in local newspapers and in *Furniture Today*);

    e.  **GRANTS** the Individual Third-Party Defendants' Motion to Dismiss Third-Party Complaint, dismisses with prejudice Defendant Ray's third-party claims for wrongful termination, tortious interference with contract, constructive fraud, intentional infliction of emotional distress, unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1, negligence, and civil conspiracy, and dismisses without prejudice Defendant Ray's third-party claim against Mr. Hood for defamation (to the extent the claim relates to alleged statements made by Mr. Hood in local newspapers and in *Furniture Today*);

    f.  **GRANTS** Third-Party Defendant Tuggle Duggins' Motion to Dismiss Third-Party Complaint and dismisses with prejudice Defendant

Ray's third-party claims against Tuggle Duggins in their entirety; and

g. **DENIES** Tuggle Duggins' Motion for Attorney's Fees.

**SO ORDERED**, this the 25th day of March, 2015.